HARRIET B. ANDREWS v. WELLS-DICKEY TRUST
COMPANY.[1]

No. 24,651.

April 17, 1925.

**Demurrer to complaint to recover stock dividend on trust securities sustained.**

Complaint *held* not to state a cause of action and that the demurrer thereto was properly sustained.

September 18, 1925.

· **No construction of subsidiary provision of contract which contravenes its dominant intent.**

Inasmuch as the expressed intent controls construction it follows that when the dominant and ultimate purpose of a contract is ascertained, no construction of a subsidiary provision is permissible (unless required by the whole contract), which runs counter to the main purpose and is in frustration of a right otherwise clearly reserved to any of the parties.

See Trusts, 39 Cyc. p. 618.

Action in the district court for Hennepin county. Plaintiff appealed from an order, Leary, J., sustaining a demurrer to the complaint. Order reversed as to first cause of action.

*Jamison, Stinchfield & Mackall,* for appellant.

*Ueland & Ueland,* for respondents.

QUINN, J.

Appeal from an order of the district court of Hennepin county, sustaining a demurrer to the complaint, upon the ground that it fails to state a cause of action.

James C. Andrews, now deceased, and the plaintiff were married, each to the other, in 1894. They were divorced in October, 1919, at the suit of the husband. In the decree and judgment, it was provided and directed that the plaintiff convey to the defendant

[1] Reported in 203 N. W. 439, 205 N. W. 65.

their homestead, known as No. 1125 Dupont Avenue South in the city of Minneapolis, also pay off the encumbrances thereon, relinquish and turn over to her the furniture and household goods then in his possession, and also that he pay to her, on the first day of November, 1919, and on the first day of each month thereafter, during the remainder of her lifetime, the sum of $250 in currency, and also assign and deposit in trust with the Minneapolis Trust Company certain collateral securities in the form of stocks or bonds, or both, held by him, of the actual value of $50,000, the same to be approved by her counsel, and to be so held, in trust, pending full performance of the obligations therein imposed upon him, with the right to substitute other collateral under the conditions to be specified in an appropriate trust agreement, to be prepared and signed by all the parties.

The decree further provided and directed that such securities be impressed with a first lien, in favor of the defendant, for the payment of all such sums of money, but that, so long as the plaintiff shall make such payments, he shall have the right to receive the dividends or returns upon such collateral; that, if he keep and perform such obligations up to the time of the death of the defendant, the collateral then held in trust shall be released to the plaintiff, but, should the husband die before the wife, then such collateral, upon her election, to become her absolute property; that, in case such collateral be deemed of less value than $50,000, or if the actual net dividends or earnings from such collateral, for the past preceding three years, shall have been insufficient to pay an income of $3,000 per year, then the defendant shall have the option to reject any portion of the collateral and to claim and receive, from the estate, other collateral, to be selected by her, in lieu thereof, sufficient to constitute $50,000 in value, or to reject all such collateral and to claim and receive, in lieu thereof, the sum of $50,000 in cash; that, in case she be unable to agree, without litigation, with the representatives of the estate, as to the value of any or all of such collateral, then the representatives shall have the right to pay her, in cash, the sum of $50,000 and have the collateral released and surrendered to the estate.

Contemporaneous with the entry of the decree above referred to, an agreement was made and signed by all of the parties thereto, including the trustee. At the same time 514 shares of the Brunswick Investment Company stock, of the face value of $100 each, were agreed upon as the collateral security required, which were deposited with the trust company in accordance with the decree of the court. The determination of this appeal does not involve the homestead, the encumbrances thereon, nor the payment of the monthly allowance to the plaintiff, but only the security referred to in the decree, and some insurance on the life of Mr. Andrews to which the plaintiff lays claim in connection with the security.

In April, 1923, a dividend of $352,000 was declared by the Brunswick Investment Company, which was paid by the issuance of shares of stock of the face value of $100, of which 445 shares were delivered to Mr. Andrews on account of the 514 shares which he owned and which were with the trust company as collateral under the decree above referred to. Andrews did not deposit the 445 shares with the 514 shares which the trust company held, but retained the same as his own until the time of his death, which occurred on February 8, 1924, when the 445 shares were received and included in the assets of his estate by the representatives thereof.

Prior to May 15, 1924, the plaintiff demanded of the defendants and of the trust company, and elected to become the owner of the 514 shares of stock, then in the hands of the trust company. The 514 shares of stock were delivered to her and she has since retained the same and in her complaint claims to be the owner thereof.

The controversy arises over the 445 shares which were issued and delivered to Mr. Andrews, it being insisted, on behalf of appellant, that the stock represented by those shares was and is component part of the 514 shares deposited with the trust company, and cannot be separated therefrom by the mere declaration of a dividend and the issuance of certificate of stock in payment thereof; in other words, that the value represented by such shares belongs to the 514 shares of stock and became appellant's absolute property when she elected to take and received the 514 shares, and that there-

fore she is entitled to recover the same in this action as prayed for in the complaint.

We do not so view the situation. In disposing of the matter, the decree in the divorce proceeding and the provisions of the contract, based thereon, must be kept in mind. The 445 shares of stock were issued April 10, 1923. The appellant demanded and received the 514 shares of stock on June 10, 1924. It appears from the pleading that, at the time of the commencement of this action in September, 1924, the 445 shares were of the value of approximately $36,400, or $80 per share. It does not appear what the value of such stock was at the time it was issued in April, 1923.

It is manifest, from a reading of the decree and trust agreement, that Mr. Andrews was required and directed to keep satisfactory collateral of the actual value of $50,000 in the hands of the trustee, with the right of substitution, and in the event of the depreciation thereof in value below $50,000, other or additional securities, to be approved by appellant, shall be deposited *to maintain the required amount*, and, in case of any misunderstanding or controversy as to the value of such securities so deposited, the same might be withdrawn and United States government bonds or cash money, to the amount of $50,000, be deposited in lieu thereof. Mr. Andrews was required to do no more so far as the amount or character of the securities go. Under the decree, appellant was to be paid $250 per month, and so long as these payments were made, Mr. Andrews was entitled to have and receive the dividends or returns upon the securities deposited. To this end the trust agreement provided as follows:

"The first party hereto shall have the right to collect and enjoy for his own use any and all dividends and earnings payable on said stock or collateral (the 514) shares which can be paid without impairing the value thereof, and shall have all the rights and privileges of the owner of said stock, not inconsistent with the provisions of this agreement."

But it is said Mr. Andrews was only to have the dividends which can be paid without impairing the value of the stock. That state-

ment cannot be accepted literally as no dividend can be paid on stock without reducing to some extent its value. But, such statement was undoubtedly intended to mean, and we think does mean, that the value of the stock deposited should not be reduced thereby to an amount less than $50,000, without giving to the appellant the right to require additional securities to keep the actual cash value thereof up to $50,000. More than this the appellant was not entitled to under the decree and trust agreement.

Shortly after the death of Mr. Andrews, appellant elected to accept the 514 shares and accordingly demanded and received the same, not however in full settlement of her rights under the decree and trust agreement, because she alleges, in ffect, that the stock in the Brunswick Investment Company is of the value of $80 per share. If such allegation should prove to be well founded as to the value of such stock, she may be entitled to recover from the estate the difference between the actual value of such stock and the maximum amount of collateral, which should have been kept with the trustee, viz. $50,000, but clearly she is not entitled to collateral, of the conceded value of some $36,400, in addition to the 514 shares of the value of over $41,000, under the circumstances disclosed. Further discussion of the pleading is deemed unnecessary. The demurrer was properly sustained.

Affirmed.

WILSON, C. J. (dissenting.)
I dissent.

### AFTER REHEARING.

On September 18, 1925, the following opinion was filed:

PER CURIAM.
A reargument of this cause has convinced us that the result first arrived at was wrong. We are of the opinion that there should be a reversal for reasons the formulation of which will now be attempted.

The sole issue concerns the rights and obligations arising from the stock dividend declared by the Brunswick Company, in 1923,

all of the new stock coming to him being issued to and retained by Mr. Andrews and none of it pledged with the trustee for the benefit of Mrs. Andrews.

It appears from the complaint and so must be taken for fact that the stock dividend reduced substantially, and well below $50,000, the value of the 514 shares of the original stock pledged with the trustee to secure the payment of the income assured Mrs. Andrews by the trust agreement. There is no attempt to fix the exact amount, but if it is true, as alleged, that after the dividend the stock was worth but $80 per share, the reduced value of that trusteed for Mrs. Andrews was about $41,000. What obligation was imposed on Mr. Andrews and what resulting right conferred on Mrs. Andrews under decree and contract by the stock dividend? It is on the claim of such an obligation and right that this action is predicated.

The trust agreement supplements and is in execution of the decree so they may be considered as one instrument, having the force of both judgment and contract. Counsel for appellant are right in saying that "the only issue here involved is as to the meaning" of those documents, but they err in basing their construction on too little of the area covered by the judicial and contractual expression, *all* of which must be resorted to for enlightenment on the question of intent, which when ascertained must control decision.

Briefly, the claim for appellant is that: (1) Mr. Andrews was entitled to none of the new and dividend stock; (2) in consequence it automatically "followed" that already pledged; and (3) went to Mrs. Andrews absolutely when she demanded, as under the contract she had the right to demand after the passing of Mr. Andrews, that the securities then in the trust be turned over to her, freed from all restriction of the trust or otherwise.

Examining the elements of the proposition in their order, we agree in substance with the first and consider that Mr. Andrews was not entitled, without further action of the kind hereinafter dealt with, to take and hold all of the new stock. But we cannot follow the next step, the argument that thereby the new stock became automatically a part of the pledge. If that were so, the third

and last step would be easy, for, if the new stock did become part of the pledge, there is no denying that it so remained until after the death of Mr. Andrews and should have gone to Mrs. Andrews on her demand.

Mr. Andrews was not entitled at once and absolutely to the new stock because of the provisions of the contract giving him "the right to collect and enjoy for his own use" only the "dividends and earnings payable on said stock or collateral which can be paid without impairing the value thereof" and because "the rights and privileges of the owner of said stock," the exercise of which was reserved to him by the contract, were only those "not inconsistent" with its provisions.

But it does not follow that because Mr. Andrews was not entitled, at once and without further procedure on his part, to the new stock, that it became automatically, without further action by anyone, a part of the pledge. That results from the fact that there had been no default, and, so far as appears, there was none during his lifetime, in the obligation imposed upon Mr. Andrews, personally, to pay Mrs. Andrews $250 per month, that being the primary undertaking to which the pledge of the stock was collateral. In the absence of such default, it was provided by the contract that Mr. Andrews should have the right to "take down" the pledged stock and replace it with other collateral of the actual value of $50,000 which, if other than United States bonds or other authorized securities, would meet with the approval of Mrs. Andrews. Mr. Andrews, in that connection, was subjected to the ultimate obligation "at all times and in all events (to) maintain said collateral to the actual value of $50,000" and no less.

Suppose, in that connection, he had announced in advance of its issue his intention to claim all of the new stock, but, recognizing its alleged effect of reducing the value of that pledge below $50,000, say to $40,000, he had tendered additional government bonds or other approved securities sufficient to restore and maintain the minimum $50,000 value demanded by the contract. Is it not clear that he would have been within his right and that in such case it could not have been required on behalf of Mrs. Andrews that all

or even any of the new stock should become a part of the pledge? Certainly that must be so for the contract provides particularly for "the event of the depreciation" of the collateral. It expressly provides that in such event "other or additional securities approved by or on behalf of the second party shall be deposited to maintain the required amount," i. e., the minimum actual value of $50,000. In that connection a possible "misunderstanding or controversy" over the value of the "deposited securities" is provided for and Mr. Andrews given the right in such case to "withdraw said securities and deposit in place thereof United States Government bonds or cash money or other securities authorized by the laws of the State of Minnesota  *  *  *  to the amount of $50,000 actual value."

It is upon that feature of the contract that we base our conclusion that, although Mr. Andrews was not entitled to have the new stock come to him automatically and at once, it does not follow that it automatically became a part of the pledge. Mrs. Andrews' rights are to be enforced, but the contract, instead of giving her the right to have the new stock become automatically a part of the pledge, gave her only the right to have its resulting depreciation in value made good in the manner indicated. That right and that right only has been violated. It should be made good, and to that extent the complaint states a cause of action, and, if found true, will entitle plaintiff to appropriate relief.

It is true that the contract declares, as claimed by plaintiff, that all of the stock remaining in the trust at the death of Mr. Andrews became plaintiff's upon her demand. The contract does not declare and it does not follow, as claimed for plaintiff, that "any stock dividends declared out of capital also belong" to Mrs. Andrews or that "James Andrews, taking them, acted wrongfully and illegally." He did so act but only to the extent that he failed to make good the depreciation of the collateral resulting from the stock dividend, his obligation being to maintain that value at $50,000 and not less.

It is not questioned but that stock dividends, declared as was this one, ordinarily follow the original stock. That is the result where there is no applicable provision of contract or trust requiring a different one. We do not apply the rule invoked, for the simple

reason that here the contract substitutes another which gave Mr. Andrews the right to take the dividend if he should make good the resulting impairment of the value of collateral.

We indicated at the outset that, in our judgment, the construction put upon the contract by counsel for plaintiff took too narrow a view in asserting that because Mr. 'Andrews was not entitled, unconditionally, to stock dividends, the one here in question automatically followed the stock into the trust for Mrs. Andrews. That construction might follow from a view limited to the provisions of the contract expressly qualifying the rights of ownership and to dividends which were reserved to Mr. Andrews notwithstanding the trust. It cannot follow, however, from any construction which is the result of a comprehensive view of the whole contract—and none other is permissible. The purpose was not primarily to assure Mrs. Andrews' ownership of any *particular* securities upon her survival of her husband. The provisions which now have resulted in so vesting ownership in her are secondary and incidental to the main purpose, which was to assure her a constant income during her life, whether she survived her husband or not. To that end his personal obligation was to pay her a stated income as long as they both lived. But to secure her, independently of his promise and if she survived him, the trust was created and gave to Mrs. Andrews not the ownership of the stock but a first lien upon it, *such rights of ownership as would not impair its value being reserved to Mr. Andrews.* Among the rights so reserved was that to appropriate to himself, absolutely, so much of any stock dividend on the old stock as he could take without reducing the value thereof below $50,000. That was a minimum figure fixed by the parties and by them thought necessary to assure to Mrs. Andrews, during her lifetime, a monthly income of $250. The dominant purpose of a contract being ascertained, no construction of a subsidiary provision is permissible, *unless required by the whole contract,* which runs counter to the main purpose and is in frustration of a right otherwise clearly reserved to either of the parties.

Equity regards that as done which should have been done and at this juncture, concerning this contract, equity cannot say, how-

ever much it may criticise whatever lack of frank disclosure attended the stock dividend, that Mr. Andrews should have done anything more than to take such steps under the contract as would have maintained the value of its pledge at a figure not less than the stipulated minimum. To the extent that he failed in that obligation, it was a contractual default which must now be made good, by a judgment if one is required, having the effect of giving Mrs. Andrews the benefit she would have had if the securities pledged had been maintained at the required minimum actual value.

In this connection, we observe in the contract language indicating that the monthly payments should continue to be made Mrs. Andrews "from the earnings of said collateral or from the first party's estate" pending the determination of any controversies that might arise. It may be that the provision in question was not intended to apply to the precise situation now presented, but its spirit as well as that of the entire contract has not been obeyed, unless the payments to Mrs. Andrews have been made continuously. If they have not, the provisions of the contract require that the omission should be made good as well as the restoration of the actual value of the securities pledged under the contract, as of the date of the declaration of the stock dividend, to an actual value of not less than $50,000.

It would seem to follow from the primary purpose of the contract, to insure Mrs. Andrews a monthly income of $250, that the securities pledged for her benefit would be maintained at a sufficient amount to maintain the earning power necessary for that purpose. And so it would if the contract were to that effect instead of to the precise point of fixing an irreducible minimum on the basis of actual value (and at $50,000), instead of an earning power of $3,000 per annum. There is a provision in the contract, of which much is attempted to be made for appellant, which entitled Mr. Andrews, at his option, to be relieved during his lifetime from further personal obligation by pledging, under the contract, other securities "in an amount sufficient to pay" Mrs. Andrews $250 per month, net, out of the income and "without using or invading the principal" of such securities. That provision applied only "during the lifetime of

both of the parties" and only in case Mr. Andrews desired to be relieved "from the liability for any further payments." There was no intention to make this provision applicable to the situation which now confronts us.

We cannot go at all with the argument of respondent that the doctrine of election applies and that Mrs. Andrews is now without any remedy because, after her husband's death, she exercised her contract right to demand for her own the stock then subject to the trust. She demanded all that was coming and the only question is whether she got it. We hold that she did not. It is not a case of a choice between two inconsistent or alternative rights or claims where there is a clear intention of the person from whom they are derived that only one should be enjoyed. See Dun. Dig. § 2909 and cases cited. It is rather a case where the plaintiff has demanded all of a given benefit and has received only a part of it and is now suing for the remainder.

The demurrer interposed below attacked separately each of the three causes of action stated in the complaint. Insofar as the order appealed from sustains the second and third, it has not been challenged or reviwed here. To the extent that the order sustains the demurrer to the first cause of action, it is reversed. So much of our former opinion as is inconsistent with this one is withdrawn.

So ordered.