**CITIES SERVICE GAS CO. v. KELLY-DEMPSEY & CO., Inc.**

No. 1963.

Circuit Court of Appeals, Tenth Circuit.

March 23, 1940.

Rehearing Denied April 22, 1940.

R. E. Cullison, of Bartlesville, Okl. (A. M. Ebright, R. O. Mason, and Frank H. Bacon, all of Bartlesville, Okl., on the brief), for appellant.

A. C. Saunders, of Tulsa, Okl. (Horace G. McKeever and McKeever, Stewart & McKeever, all of Enid, Okl., on the brief), for appellee.

Before PHILLIPS, BRATTON, and HUXMAN, Circuit Judges.

PHILLIPS, Circuit Judge.

Cities Service Gas Company, hereinafter referred to as the Gas Company, brought this action against Kelly-Dempsey & Company, Inc., hereinafter referred to as the Construction Company, for alleged breach of a written contract.

For the purpose of settling an existing controversy and an action pending in the United States District Court for the Northern District of Oklahoma, on November 14, 1931, the Gas Company and the Construction Company entered into a written contract on which the instant case is predicated. After reciting the existence of the controversy, the pendency of the former suit, and the purpose to effect an adjustment and compromise thereof, the contract provides in the first article thereof that the Construction Company shall pay the Gas Company $10,000 in cash and execute five notes at $5,000 each, due one, two, three, four, and five years from date, respectively; that as a further consideration the Construction Company shall transfer and convey to the Gas Company certain properties valued at $65,000; and that if the Construction Company shall be the successful bidder upon and shall be awarded any pipe-line construction contracts by the Gas Company, or its subsidiaries, or associated or affiliated companies, "a portion of the profits, as herein provided, arising by reason of such contracts, shall be paid to Gas Company to the extent of the sum of $50,000.00, but it is specifically understood and agreed that the obligation of said Construction Company to pay said $50,000.00 is contingent and not absolute

and is conditioned only upon Construction Company hereafter being awarded constructing contracts and realizing profits thereunder, from which fund, and only from such fund, the said $50,000.00 shall be taken and paid."

The second article of the contract provides that if the Construction Company shall be awarded such contracts, and if one or more of the five notes shall be then unpaid, the "Construction Company agrees that the payment of said unpaid note or notes shall be accelerated to the extent herein provided, and *there shall be applied to the payment* of such unpaid note or notes a sum equal to five percent (5%) of the net profits arising to said Construction Company by reason of" such contracts. (Italics ours.)

The third article of the contract provides that the Construction Company will submit bona fide bids in the usual manner and will exert a bona fide effort to secure such contracts, and further provides that:

"From the net profits, *as received from said contracts,* Construction Company agrees to apply five percent (5%) to the liquidation of the negotiable notes absolutely payable as aforesaid to be applied as designated by Gas Company either to the newest, the oldest or the intermediate note unpaid and an additional twenty-five per cent (25%) upon the contingent obligation aforesaid and when either the said absolute obligation or the contingent obligation aforesaid is extinguished then thereafter *there shall be applied to the remaining obligation or obligations* net profits to the extent of thirty percent (30%) upon the Contracts or work aforesaid." (Italics ours.)

The fourth article reads:

"It is agreed that if Contracts for construction work sufficient to discharge said contingent indebtedness, be not awarded to or entered into with Construction Company within the period of six (6) years from the date hereof and such failure shall not arise because of the fault of Construction Company, then all liability of Construction Company for said sum of $50,000.-00, contingently owing as herein provided, shall be terminated and no further liability shall persist in favor of Gas Company against Construction Company thereon."

In the preparation of the contract, counsel for the Gas Company first submitted a draft. Article four of that draft was changed at the request of counsel for the Construction Company in the following particulars: The word "no" before the word "contracts" in the first line thereof was eliminated. The words "sufficient to discharge said contingent indebtedness" in line two thereof were inserted, and the word "not" in line three thereof was inserted.

The notes referred to in the contract have been paid in full. The Construction Company was awarded two construction contracts during the six-year period. This action was commenced on June 10, 1938, to recover thirty per cent of the profits on such contracts. It was stipulated that thirty per cent of such profits amounted to $7,000.

Counsel for the Construction Company contend that thirty per cent of the net profits realized by it under such contracts within the six-year period, being insufficient to discharge the whole of the $50,000, or contingent liability, it was under no obligation to account for any profits. On the other hand, counsel for the Gas Company contend that it is entitled to thirty per cent of the profits arising under such contracts during the six-year period, and that the effect of article four was merely to discharge any or all of the $50,000 contingent indebtedness remaining unpaid at the expiration of the six-year period after applying, in accordance with article three, thirty per cent of the net profits which accrued during that period. The trial court adopted the interpretation urged by the Construction Company. From a judgment for the Construction Company, the Gas Company has appealed.

Oklahoma has adopted statutory rules for the interpretation of contracts.[1]

---

[1] The section references are to O.S. 1931.

"9460. A contract must be so interpreted as to give effect to the mutual intention of the parties, as it existed at the time of contracting, so far as the same is ascertainable and lawful."

"9462. The language of a contract is to govern its interpretation, if the language is clear and explicit, and does not involve an absurdity."

"9463. When a contract is reduced to writing, the intention of the parties is to be ascertained from the writing alone, if possible, subject, however, to the other provisions of this article."

"9465. The whole of a contract is to be taken together, so as to give effect to

The interpretation urged by the Construction Company is at variance with the plain provisions of the third article of the contract. It provides that the Construction Company from "net profits *as received* from said contracts" shall apply five per cent to the liquidation of the negotiable notes and twenty-five per cent upon the contingent obligation and when either the absolute obligation or the contingent obligation is extinguished, then to the remaining obligation or obligations. (Italics ours.) This clearly provides for application of profits as received rather than that there shall be no application unless and until thirty per cent of the net profits accruing within the six-year period shall equal the contingent obligation, and no other portion of the contract makes specific provision as to when the profits shall be applied.

Such interpretation is also at variance with the second article of the contract which provides that there shall be applied to the payment of such unpaid note or notes a sum equal to five per cent of the net profits arising to the Construction Company by reason of such contracts.

The fourth article can be reconciled with the second and third articles by construing it as meaning that at the expiration of the six-year period the obligation to apply thirty per cent of the net profits arising under such contracts to the payment of the notes and contingent obligation would cease.

■ It is well settled that effect should be given, if possible, to every word, phrase, clause, and sentence of a contract, and apparently conflicting provisions should be reconciled if that can be done by any reasonable construction. [2]

■ The conflict, if any there be, between the provisions of article four and article three was introduced into the contract by the changes suggested by the Construction Company. The language, therefore, under § 9478, supra, must be interpreted most strongly against the Construction Company which caused the uncertainty to exist. Had the Construction Company intended to so change the contract that the application of thirty per cent of the profits should not be made as they accrued, it is reasonable to assume that it would have requested an amendment of article three.

■ A construction will be favored that will effectuate the dominant purpose of the contract. A provision requiring something to be done to effect that purpose is entitled to greater consideration than one which does not. [3]

■ The main purpose of the unexecuted provisions of the contract was to provide for the application of thirty per cent

every part, if reasonably practicable, each clause helping to interpret the others."

"9467. A contract must receive such an interpretation as will make it lawful, operative, definite, reasonable and capable of being carried into effect, if it can be done without violating the intention of the parties."

"9473. If the terms of a promise are in any respect ambiguous or uncertain, it must be interpreted in the sense in which the promisor believed, at the time of making it, that the promisee understood it."

"9476. Repugnancy in a contract must be reconciled, if possible, by such an interpretation as will give some effect to the repugnant clause, subordinate to the general intent and purposes of the whole contract."

"9478. In cases of uncertainty not removed by the preceding rules, the language of a contract should be interpreted most strongly against the party who caused the uncertainty to exist. The promisor is presumed to be such

party, * * *." 15 Okl.St.Ann. §§ 152, 154, 155, 157, 159, 165, 168, 170.

[2] F. W. Woolworth Co. v. Petersen, 10 Cir., 78 F.2d 47, 48, and cases cited in Note 3 thereto.

[3] Las Animas Consol. Canal Co. v. Hinderlider, 100 Colo. 508, 68 P.2d 564;

Linde Dredging Co. v. Southwest L. E. Myers Co., 5 Cir., 67 F.2d 969, 972;

Marx v. American Malting Co., 6 Cir., 169 F. 582, 584;

Smith Stage Co. v. Eckert, 21 Ariz. 28, 184 P. 1001, 1005, 7 A.L.R. 995;

Smithart v. John Hancock Mut. L. Ins. Co., 167 Tenn. 513, 71 S.W.2d 1059;

Laurenzi v. Atlas Ins. Co., 131 Tenn. 644, 176 S.W. 1022;

Watson v. Buckhannon River Coal Co., 95 W.Va. 164, 120 S.E. 390, 394;

Bullowa v. Thermoid Co., 114 N.J. L. 205, 176 A. 596, 599;

State v. Comer, 176 Wash. 257, 28 P. 2d 1027, 1030;

Andrews v. Wells-Dickey Trust Co., 163 Minn. 35, 203 N.W. 439, 205 N.W. 65;

Williston on Contracts, Rev.Ed., Vol. 3, § 619.

of the net profits, realized by the Construction Company from such contracts, on the notes and the contingent obligation. To construe the contract to mean that there should be no application of net profits until and unless thirty per cent thereof should equal $50,000 within the six-year period would defeat the main purpose of the contract.

We are of the opinion that when the contract is construed as a whole, with a view to effectuating the main purpose thereof, to giving effect to every word, phrase, clause, and sentence thereof, and to reconciling apparently conflicting provisions, the conclusion must be reached that the parties intended that thirty per cent of the net profits on such contracts during the six-year period should be applied as received on the notes and the contingent obligation.

The judgment is reversed and the cause remanded with instructions to enter judgment for the Gas Company for $7,000, with costs.