Anderson v. Hammond.

2L 281
9L 542

J. A. ANDERSON, Adm'r, v. J. C. P. HAMMOND et als.

WILLS. *Construction.* The testator by his will, after making his wife residuary devisee and otherwise providing for her, added, that it was his "will and desire" that she should pay his nephew "for the purpose of educating him," a certain sum annually, commencing at a fixe l date, until he came of age. The nephew died over two years after that date, but before he came of age. Held, that the legacy was valid and a personal charge on the wife, but ceased on the death of the legatee.

FROM SHELBY.

Appeal from the Second Chancery Court at Memphis. S. P. WALKER, Ch.

L. B. McFARLAND and J. W. CLAPP for complainant.

L. W. FINLAY, W. M. RANDOLPH and T. B. MICOU for ·!·»/·₁₁;·.

COOPER, J., delivered the opinion of the Court.

By his will John Randolph made his wife Statira his residuary legatee, and also directed certain funds to be invested in a plantation for her sole use for life, and at her death to be sold, one-half the proceeds to go to the heirs of his sister, Sarah Lyell, and the other half to be at the disposal of his wife. "It is further my will and desire," he says, "that my beloved wife, Statira, shall pay two hundred dollars, commencing 1st of January, 1861, to my nephew, John Lyell, for the purpose of educating him, said sum of two hundred dollars to be paid annually until said ·₁₁ n Ly·.. is of age."

The testator's wife Statira and J. C. P. Hammond were appointed executors of the will, and qualified as such in November, 1859, when the will was proved. John Lyell lived with his parents in Texas. He would have come of age in 1866, but died on the 22d of April, 1863. No part of the money bequeathed for the purpose of educating him was ever paid to him, or used for that purpose.

The widow of the testator afterwards intermarried with James G. Moore. On the 15th of December, 1871, the present bill was filed by J. A. Anderson, as administrator of John Lyell, against Moore and wife, J. C. P. Hammond, and the sureties on the executors' bond, to recover against each of them "individually" the amount of the $200 annuity, with interest.

Pending the suit Statira Moore died, and her husband qualified as her personal representative, and there was a revivor against him as such.

The Chancellor, on final hearing, gave a decree in favor of the complainant against Moore, as executor of his wife, for the full amount claimed, namely, $200 a year from 1861 to 1866, with interest, and dismissed the bill as to the other parties. Moore alone appealed.

It is argued against the complainant's entire right of recovery, that the words of the will in favor of his intestate are not sufficient to fix a charge upon the legatee, being expressive merely of a wish or request which she may disregard.

It is the intention of the testator which is to be sought after, and the real question in all cases of precatory words in a will is, whether the wish, or desire

or recommendation, expressed by the testator, is meant to govern the conduct of the party to whom it is addressed, or whether it is merely an indication of that which he thinks would be a reasonable exercise of the discretion of the party, leaving it, however, to the party to exercise his own discretion. *Williams* v. *Williams*, 1 Sim. N. S., 358; *Bernard* v. *Mumshull*, Johns. (Eng. Ch.), 276; *Van Duyre* v. *Van Duyre*, 1 Mc-Carter, 397.

We have two cases of our own, which illustrate the rule in both aspects. *Anderson* v. *McCullough*, 3 Head, 614; *Thompson* v. *McKissick*, 3 Hum., 631.

The words of the testator in this instance admit of no doubt. "It is my will and desire" that my wife "shall pay." It would have been difficult for him to have used language more expressive of positive intent on his part "to govern the conduct of the party to whom it is addressed." And it is by precisely the same words, "it is my will and desire," that he gives to the widow herself all the rights she acquires by the will.

A mere charge on land, payable at a future day, will not, it seems, ordinarily vest until the time of payment, and if the legatee die beforehand, the estate will go to the devisee freed from the charge. *Pawlett* v. *Pawlett*, 1 Vern., 321; *Phipps* v. *Lord Mulgrave*, 3 Ves., 613.

But where the legacy is made a personal charge on the devisee, and so given as to vest upon the death of the testator, the payment being deferred, the death of the legatee before the time of payment will not.

affect the right of his personal representative to recover the legacy. *Hodgson* v. *Rawson*, 1 Ves., 44; *Jeal* v. *Titchener*, 1 Bro. C. C., 120; *Manning* v. *Herbert*, Amb., 575.

So if a direct bequest of a given sum be made to a legatee for a particular object or purpose defined by the will, the object or purpose being exclusively for the benefit of the legatee, and the application of the money not expressly controlled by the will, equity will not undertake to compel the application, and the death of the legatee will not affect the right of recovery.

Thus where money so given is directed to be invested in an annuity, it will go upon the death of the annuitant immediately after the testator to the administrator. *Yates* v. *Compton*, 2 P W., 308.

So where estates were given in trust to pay certain sums of money annually to three children during the life of their father, and one die, his administrator will be entitled to take his share. *Lewes* v. *Lewes*, 16 Sim., 266. So, where money is given to an infant to bind him as an apprentice, and he die before attaining the proper age for being bound out. *Barlow* v. *Grant*, 1 Vern., 255. And, *a fortiori*, if the infant live, but for any reason the money be not applied to the specific purpose. *Barton* v. *Cooke*, 5 Ves., 461; *Gough* v. *Bult*, 16 Sim., 45. Our own cases are directly in point. *Laura Jane* v. *Hagan*, 10 Hum., 332; *Lynch* v. *Burts*, 1 Heis., 600.

The rule in this class of cases is, where the bequest is manifestly intended for the general benefit of the legatee, and the time of payment is postponed for

Anderson *v.* Hammond.

the convenience of the estate, the person or the property charged, or even for the supposed benefit of the legatee, the legacy vests at the death of the testator, and the death of the legatee before payment will not divest it. *Sidney* v. *Vaughan,,* 2 Bro. P. C., 254; *Fonereau* v. *Fonereau,* 3 Atk., 645; *Lane* v. *Goudge,* 9 Ves., 225; *Noel* v. *Jones,* 16 Sim., 309.

The rule has been applied where a father devised a farm and stock to one son, upon condition that he annually, for seven years, pay a certain sum to another son, and the latter died within the seven years. *Bowker* v. *Bowker,* 9 Cush. 519. The reason being, that the testator clearly intended the gross sum of the instalments as the legacy of the second son, and extended the payment for the benefit of the first son.

I do not find, nor have the learned counsel produced any authorities to show that the rule has been extended to direct annuities, or cases where the only bequest is in the payments directed to be made, and the payments have been fixed at intervals, in the future, with reference to particular circumstances in relation to the legatee which might render it doubtful whether the legacy would ever be wanted, or wanted beyond a part of the payments. *Birdsall* v. *Hewlett,* 1 Paige, 32.

There is a large class of such cases, where it has been held or taken for granted that the payments end with the death of the legatee.

An annuity, or annual charge, may be for any period designated by the grantor, and charged on realty or personalty, corpus or income. *Morgan* v. *Pope,* 7 Col., 541, 547.

---

Anderson *v.* Hammond.

---

The devisee of property charged is usually personally liable for the payment of the charge. *Hill* v. *Sharp,* Thomp. Cas., 188; *Glenn* v. *Fisher,* 6 Johns. Ch., 33; *Larkin* v. *Mann,* 53 Barb., 267; *Cole* v. *Cole,* 53 Barb., 667. And may be made so directly without charging the property. *Armstrong* v. *Armstrong,* 4 Baxt. 357.

If the annuity or annual charge be for the maintenance of a particular person, without more, the conclusion would seem irresistible that the burden would cease with the life of the person to be maintained. And the additional limitation that the charge shall terminate on the coming of age or marriage of the beneficiary, cannot change the nature of the legacy. The remedy in such case, in the event of a breach, would be the actual damage. *Armstrong* v. *Armstrong,* 4 Baxt., 357.

So if the maintenance be coupled with conditions touching the mode of performance, the party charged may insist upon compliance. Thus, where the testator gave the residue of his estate to the son and directed that his daughter should reside with and be maintained by him so long as she remained unmarried, it was held, that so long as the son was willing the daughter should reside in his house, she was not entitled to any maintenance unless she did reside with him. *Wilson* v. *Bell,* L. R. 4 Ch. App., 581. Of course, if for any reason such residence was improper, a court of chancery would fix a pecuniary charge in lieu thereof. *Hill* v. *Sharp,* Thomp. Cas., 188. Or impound a sufficiency of the estate to raise the annual charge.

Anderson *v.* Hammond.

*Morgan* v. *Pope*, 7 Col., 541.    The death of the beneficiary in all such cases, would, it cannot be doubted, at once terminate the charge.

We see no reason why the same rule should not apply to an annual charge for educating a person, which is in the nature of maintenance, where such person dies before the expiration of the time when the annual charge is to cease.

The question is, of course, one of intent in this class of cases. To continue the charge for the benefit of the estate of the legatee, after the legatee has by death ceased to need it, would be not to carry out an intent but to make one.    No rule of law requires such a construction, nor has a single case been adduced, or found, which so adjudges.

The charge in this case is clearly upon the widow, not as executrix, and she being in any event primarily liable, her appeal would not bring up the case as to the co-executor.

The liability of the subsequent husband of the devisee terminated with her death, a relic, perhaps, of the lore of the past, but the law of the State until modified by the act of 1877, ch. 79.    *Jones* v. *Walkup*, 5 Sneed, 135;    *Allen* v. *McCullough*, 2 Heis., 183. And the bill does not seek to reach the property devised as being subject to the charge.

The decree will be modified by reducing the amount of the recovery in accordance with the opinion, and affirmed.

The bill, although somewhat equivocal in its form, does expressly ask for a decree against all the de-

fendants "individually," and the decree is, therefore, within the pleadings.

The devisee could have made payment of the instalments of 1861 and 1862, and having never offered to pay anything, should be charged with interest.

The complainant will pay the costs of the court, and the costs of the court below will be paid as directed by the Chancellor.