# Reed's Estate (No. 1).

*Wills—Annuities—Arrearages—Deficiency of income.*

1. Where the income out of which an annuity is to be paid fails in any year or years, the arrearages on the annuity are to be paid out of subsequent accumulations unless there is a plain intent expressed in the will to the contrary.

2. Where a testator directs that out of the net income of the residue of his estate there shall be paid to one son eight thousand dollars per annum for life, and to a second son the same sum per annum for life, if the income shall be sufficient therefor, and further directs that in any event the first son shall receive all the income until he shall have received eight thousand dollars per annum before the second son should receive any part thereof whatsoever, the first son is entitled to be paid arrearages on his annuity out of subsequent income in excess of eight thousand dollars per annum before his brother receives anything.

Argued April 24, 1912. Appeal, No. 161, Jan. T., 1912, by C. M. Reed, from decree of O. C. Erie Co., Feb. T., 1911, No. 44, dismissing exceptions to auditor's report in Estate of Harriet W. Reed, deceased. Before BROWN, POTTER, ELKIN, STEWART and MOSCHZISKER JJ. Affirmed.

Exception to report of Joseph M. Force, Esq., auditor. Before BENSON, P. J.

The opinion of the Supreme Court states the case.

*Error assigned* was decree dismissing exceptions to aduitor's report.

*Rossiter & Thompson,* for appellant, cited: Brewster's Appeal, 35 Pitts. Leg. J. 449; Sell's Est., 4 W. N. C. 14; Stevenson's Est., 52 Pitts. Leg. J. 137; Forbes v. Richardson, 11 Hare 354; Shupp v. Gaylord, 103 Pa. 319.

*Frank Gunnison,* with him *Henry E. Fish, W. Pitts Gifford* and *A. O. Chapin,* for appellees.

OPINION BY MR. JUSTICE STEWART, May 22, 1912:

The testatrix, after making several bequests not here involved, gave the entire residue of her estate in trust, with the following direction as to the expenditure and appropriation of the income derived therefrom. "All the rest, residue and remainder of my estate,...... I give, devise and bequeath unto my executors hereinafter named, and to the survivor of them,.......in trust, .......to pay over and distribute the net income of all the rest, residue and remainder of my estate, real, personal and mixed as follows, to wit: To pay therefrom to my son Lloyd G. Reed, the sum of eight thousand ($8,000.00) dollars per annum for and during the term of his natural life, and if said income shall be sufficient therefor, then to pay therefrom to my son Charles M. Reed, for and during the term of his natural life, the sum of eight thousand ($8,000.00) dollars per annum; and if my said net income from all the rest, residue and remainder shall exceed the sum of sixteen thousand ($16,000.00) dollars per year then and in that case I direct that the amount of income in excess of said sixteen thousand ($16,000.00) dollars shall be divided equally between my said sons Charles M. Reed and Lloyd G. Reed, during their natural lives, but in any event I direct that my said son Lloyd G. Reed shall receive all the income accruing from all the rest, residue

and remainder of my estate until he shall have received the sum of eight thousand ($8,000.00) dollars per annum, before the said Charles M. Reed shall receive any part thereof whatsoever.

"From and after the death of my said son Lloyd G. Reed, I direct the income to which he shall be entitled under this my will for his natural life, shall be paid by my said executors to his children in equal shares until such time as the youngest of them shall have reached the age of twenty-one years, then my said executors shall then assign and convey the portion of my estate to which the said Lloyd G. Reed shall be entitled to the use for his natural life, to his said children in equal shares absolutely.

"From and after the death of my son Charles M. Reed I direct that the income to which he shall be entitled under this my will for and during his natural life, to the extent of two thousand ($2,000.00) dollars shall be paid over by my said trustees equally to my two grandsons, Harrison Reed and Carl M. Reed, for and during the term of their natural lives, and that all of said income to which the said Charles M. Reed shall be entitled for and during his life time, in excess of said two thousand ($2,000.00) dollars shall be paid over to my grandson Carl M. Reed, for and during his natural life."

We have given as much of the will as is necessary for an understanding of the question here raised. Testatrix died 3d December, 1901. It was not until 1907 that the trust estate yielded any net income. In 1907 it yielded $1,000; in 1908, $5,500; in 1909, $6,450; thereafter up to 1st February, 1910, $900, aggregating for this period the sum of $13,850.00, all of which was paid to Lloyd G. Reed, Charles receiving nothing. Lloyd G. Reed died 4th April, 1910. The income accruing since his death has not only been sufficient for the payment to Lloyd G's children of the income which their father would have received had he lived, but there remains a

surplus of $9,924. The proper distribution of this surplus was the matter in controversy before the court in adjudication proceedings on the sixth account of the trustees in which they had charged themselves with it. The entire fund was awarded to the estate of Lloyd G. on the theory that Lloyd G. by the terms of the will, was entitled to receive $8,000 annually out of the income, and failing to receive this in any year because of insufficiency of income during the year, he was entitled to recover the difference out of any excess of income beyond his $8,000 in any subsequent year or years. During the period between his mother's death and his own he had received but $13,850.00. Under the view adopted by the auditor and the court, no part of the annual income thereafter accruing, no matter how much in excees of $8,000 in any year, could be claimed by Charles until the difference between what Lloyd G. had received and what he would have received, had the income each year been as much as $8,000, shall have been paid. From the decree of the court awarding the fund to Lloyd G's estate, Charles has taken this appeal.

The effect of the decree if permitted to stand will be to postpone indefinitely any participation of Charles M. in the income, and it may defeat his participation entirely. He can have no share in it until the arrearages due Lloyd G. have been paid thereout. When, if ever, accumulations of income shall be equal to this charge depends on the productiveness of the estate, a matter about which there can be nothing but speculation. At first blush this would seem inequitable, and the mind would be inclined to resist a conclusion that would work such results. It is to be remembered, however, that we are not making a will for this testatrix, but simply ascertaining from the will she has herself made what her intentions were in this respect. It may be inequitable, but if she so designed it, it is not for us to give any different effect to it. What may seem

inequitable to one, unfamiliar with circumstances or conditions in which testatrix was placed, may to another with fuller knowledge of the fact, be clearly revealed as not only equitable but generous toward the party apparently discriminated against. It is impossible to read this will and not observe the radical distinction in the character of the gift to Lloyd G. and that to Charles M. The former is a gift absolute of the entire annual income of the estate within the limit of $8,000. Whatever yielded within this limit is to be his and his alone; whereas, Charles M. becomes a beneficiary only in the event that there is an excess of income above $8,000 in any year, and then he shares such excess with Lloyd G. A definite sum of $8,000 a year is given to Lloyd G. and to the payment of this annual sum the testatrix subjects not only all income for the current year, but, having in contemplation a possible failure in some particular year or years, she provides as follows: "But in any event I direct that my said son Lloyd G. Reed shall receive all of the income accruing from all the rest, residue and remainder of my estate until he shall have received the sum of eight thousand dollars per annum." It will be observed that what it here subjected is not simply the income for the particular year, but all the income accruing from the estate without a limitation as to time other than that which makes an end when Lloyd shall have received the sum of $8,000 per annum. Never during any one year of his life did he receive as much as $8,000. Had he received it one year and not in others, it could not be said that he was receiving $8,000 per annum. That could be said only in case he received it uniformly as the years went by; and when testatrix ordered that he should receive this much per annum, and directed that the entire income should be subjected to this charge, and that it was to be paid before Charles M. was to receive anything therefrom, she could have intended nothing else than that any deficit

of income in any year or years was to be made good out of income of succeeding years should there be excess sufficient for it, or, pro tanto. We take the general rule to be—it is at least one resting on our own and other authorities, Rudolph's App. 10 Pa. 34; Stewart v. Chambers, 2 Sandford Ch. 382,—that where the income out of which an annuity is to be paid fails in any year or years the arrearages on the annuity are to be paid out of subsequent accumulations, unless there is a plain intent expressed in the will to the contrary. In the first case above cited the trust was to apply to rents and profits to one for life and in case he should leave a widow to pay the widow an annuity of $1,000 out of the net income or proceeds during widowhood, and the residue of the income to a third party. The first taker died leaving a widow. The clear income during certain years was insufficient to pay the widow her annuity. It was held that the widow was entitled to the arrearages out of income accruing during subsequent years. But we do not need to rest the case on general rule, sufficient as it would be, since clearly no contrary intent can be gathered from this will. It speaks for itself in an unequivocal way, and a purpose to secure to Lloyd G. $8,000 a year during his natural life by subjecting the income during the whole of that period to this liability is, we think, unmistakable. The appeal is dismissed and the decree is affirmed.