### Brock Estate.

Argued November 21, 1944. Before KELLER, P. J., BALDRIGE, RHODES, HIRT, RENO and JAMES, JJ.

*T. R. White,* with him *Robert B. Greer, Greer & Johnson, Wayland H. Elsbree,* and *White & Williams,* for appellants.

*Robert W. Beatty,* with him *George T. Butler, Butler & Beatty, Francis A. Lewis,* and *W. W. Montgomery, Jr.,* for appellees.

OPINION BY RENO, J., March 2, 1945:

This is an appeal from the decree dismissing exceptions to the adjudication of the account of the trustees

under the will of Alice Gibson Brock. The question to be decided is whether a proper construction of the will permits payment to the estate of a deceased annuitant of arrearages accumulating in his lifetime, which remained unpaid because the income during those years was insufficient to pay the annuity in full, out of income accruing to the trust estate after the death of the annuitant.

Testatrix died September 14, 1939, leaving a will which, so far as now material, provided in the sixth paragraph that the residue of her estate should be held in trust "to pay out of the net income from said trust estate, the following annuities for the life or lives of the respective annuitants". Seven beneficiaries were then enumerated; among them, Arthur Brock, Jr., whose annuity was fixed at $2,400; and the total annual gifts to all annuitants aggregated $18,700. The will continued: "It is my desire that the said annuities be paid in quarterly instalments, if possible, on the first days of January, April, July and October in each year, ...... I direct my said trustees to pay such part of the said net income as shall be in excess of $18,700 (the aggregate maximum amount of the annuities above provided for) to my friends, Augustine Haughton and Margretta Stewart Dietrich, in equal shares for their respective lives, and from and after the death of the one of them who shall first die, to pay such excess to the survivor of them for life; and from and after the death of each annuitant above named, but subject to the prior payment in full of all the other annuities herein provided for, to pay over and divide in equal shares in perpetuity to and between Bryn Mawr College and The Pennsylvania Academy of the Fine Arts, all of the net income from said trust estate which shall not be payable to one or more living annuitants hereunder; ......" Testatrix was survived by six of the seven annuitants, but one of the survivors, Arthur Brock, Jr., whose executor is the appellee here, died on February 10, 1943.

If the income from the trust estate during his lifetime had been sufficient to pay all annuities in full he would have been entitled to have received $8,173.33, but his pro rata share of the actual income accrued to the date of his death was only $4,788.05, which sum was paid by the trustees either to him or to his executor after his decease. At the audit of the account of Alice Gibson Brock's trustees there was awarded to the executor of Arthur Brock, Jr.'s, estate the deficiencies which had accumulated in Arthur's lifetime, and it was ordered that the arrearages be paid ratably with the payments to the remaining living annuitants out of subsequently accruing income. Appellants, the trustees of Bryn Mawr College, one of the remaindermen, insist that the order of the court below is based upon an erroneous interpretation of the sixth paragraph of the will of Alice Gibson Brock.

The guiding principle to be kept in mind in the construction of a will, where its meaning is not free from doubt, is that the law seeks to discern the true intention of the testatrix as it may be gathered from the four corners of the document. *Brennan's Estate,* 324 Pa. 410, 188 A. 160; *Calder's Estate,* 343 Pa. 30, 21 A. 2d 907. The pursuit is of the intended meaning of the language used, not what might have been intended but was left unsaid, and when ascertained effect will be given to testatrix' purposes unless they are in contravention to positive rules of law. *Prime's Petition,* 335 Pa. 218, 6 A. 2d 530; *Conner's Estate,* 346 Pa. 271, 29 A. 2d 514. It is laid down as a general rule "that where the income out of which an annuity is to be paid fails in any year or years the arrearages on the annuity are to be paid out of subsequent accumulations, unless there is a plain intent expressed in the will to the contrary": *Reed's Estate (No. 1),* 236 Pa. 572, 577, 85 A. 15. This general rule, however, enjoins rather than precludes a careful study of the instrument in search of the real intentions of the decedent.

Were the annual gifts of income to the several beneficiaries intended to be charged against the net income of the trust estate generally, so that deficiencies in earlier years are to be applied against subsequent excesses, or was it testatrix' purpose to have an annual casting up of accounts so that each year is to be made a separate financial period? Her intention in the latter direction is manifest from a consideration of the entire dispository scheme which she created.

The direction in the will that beneficiaries be paid in quarterly instalments "if possible", while it might be taken primarily as an indication of the time at which payments are to be made, reflects in addition a recognition by testatrix of the contingency that the income from the fund might not be sufficient at all times to render it possible for regular distributions to be made. The sum of $18,700 is described as the "aggregate *maximum* amount" of the annuities provided for. (Italics supplied). This clearly points to a realization by testatrix that the specific annual gifts of income, while they could not be more than that amount, might in some years be less than the maximum allocated as an annuity or yearly payment to each of the life beneficiaries. Testatrix' disposition of all the net income in excess of $18,700 makes it impossible to pay arrearages out of surplus net income arising in subsequent years, for there can be no surplus income undisposed of without doing violence to the express language of the will. The will plainly directs that all net income above $18,700 shall be divided in equal shares between Augustine Haughton and Margretta Stewart Dietrich during their joint lives and that it shall all be paid to the survivor for life after the death of the one first to die. The payment of past deficiencies to other annuitants would be in direct contradiction to what is unmistakably otherwise ordered to be done with the income exceeding the named figure. The excess above $18,700 is obviously intended to be calculated on a yearly basis, for

the will declares that all sums above that amount are to be distributed to Augustine Haughton and Margretta Stewart Dietrich. It would be anomalous to say that the individual life beneficiaries were to receive annual gifts totalling $18,700 but only until the cumulative net income from the fund was sufficient to provide each of them with a single yearly payment and that the entire net income thereafter accruing was to be divided between the two more favored beneficiaries to the exclusion of all the others. Appellee's argument that any distribution to remaindermen is "subject to the prior payment in full of all the other annuities," and that therefore the arrearages should be made up before remaindermen are entitled to take, is not helpful because it assumes the very point in issue. It may be conceded that the college and the academy must be deferred until all the annuities are paid in full, but the question remains whether the requirement of "payment in full" is satisfied by a pro rata distribution of all the income from the trust estate, whatever it may be, as it arises from year to year, or whether there can be no full payment until each annuitant has received a sum equal to the maximum amount of his annual gift multiplied by the number of years by which he survived testatrix, regardless of whether the maximum was earned or not during each of the years of the annuitant's life. We think the language of the will was intended to make each year stand alone and that it was not proposed to carry forward into subsequent periods the ill fortune of earlier years.

The plan conceived by testatrix was not an involved one, and the distributions to be made under it can readily be computed, bearing in mind that each year is to be considered separately. If the net income is exactly $18,700, it is directed to be paid in the specified amounts to the individual beneficiaries still surviving in the year when the income is earned. If some of the beneficiaries have died, the shares of those deceased are to

be equally divided between the college and the academy. If the income for any one year exceeds $18,700, testatrix has ordered that it be distributed exactly as though it had been the sum, except that all the excess is to be paid to Augustine Haughton and Margretta Stewart Dietrich, or the survivor. If both these beneficiaries are deceased, all of their shares, including the excess, is awardable under the will to the college and the academy. If the net income falls below $18,700 in a particular year, it is provided that the amount earned be distributed ratably among the living annuitants until all are paid the full amount of their gifts for that year, and any balance arising by reason of the prior deaths of any of the beneficiaries belongs properly to the remaindermen. That this was testatrix' plan of distribution seems clear from a consideration of the entire will, and under it there is no room for the contention that arrearages were intended to be made up to the annuitants out of the income earned in years subsequent to those in which the deficiencies arose.

In *Brewster's Appeal*, 7 Sadler 604, 612, 12 A. 470, 475, testatrix placed her estate in trust and provided that $1,000 be taken out of the annual income for the maintenance of her children and that the balance of the income be appropriated to the discharge of incumbrances and then reinvested to form part of the principal. An annual payment of $260 was ordered paid to testatrix' sister for life, and in rejecting the claim that deficiencies in the annuity should be compensated by surplus income in succeeding years the Supreme Court said: "This disposition of any excess over $1,000, is an answer to the suggestion that when the income proved to be less than $1,000, the deficit should be made up from the surplus in after years. If the specific directions of the will, in regard to annual income, are carried out, such a thing as undisposed of or surplus income could never be possible. It is very evident, therefore, that testatrix never contemplated less than $1,000 net

income in any one year, and for that reason made no provision for supplying any possible deficiency." See, also, *Comstock v. Comstock,* 78 Conn. 606, 63 A. 449; *Brooks v. Pierce,* 266 Mass. 161, 165 N. E. 4; *Fate v. Fate,* 295 Ill. App. 271, 14 N. E. 2d 890; *First National Bank of Chicago v. Cleveland Trust Co.,* 308 Ill. App. 639, 32 N. E. 2d 964; In re *Hirshon's Estate,* 251 App. Div. 546, 296 N. Y. S. 439; and related cases collected at L. R. A. 1917 E, p. 591 et seq.

Decree reversed, costs to be paid by estate.