IN RE TRUSTEESHIP CREATED BY DOUGLAS A. FISKE AND ANOTHER.
LOIS FISKE PETERS AND ANOTHER v.
HARRIET S. UELAND AND ANOTHER.
FIRST NATIONAL BANK OF MINNEAPOLIS,
AS TRUSTEE, RESPONDENT.[1]

July 2, 1954.

No. 36,325.

---

[1]Reported in 65 N. W. (2d) 906.

454

*Robert J. Flanagan, Charles S. Bellows,* and *Best, Flanagan, Rogers, Lewis & Simonet,* for appellants.

*Pierce Butler, Doherty, Rumble & Butler, Marcus G. Sundheim,* and *Sigurd Ueland,* for respondents Timothy Fiske and Harriet S. Ueland.

THOMAS GALLAGHER, JUSTICE.

We are asked to construe certain provisions of an *inter vivos* trust executed by Douglas A. Fiske, a Minneapolis attorney, and Alice V. Fiske, his wife, on September 1, 1923, the trust in part constituting a settlement in lieu of alimony in divorce proceedings then pending between them, and in part constituting a disposition of the trust property for the benefit of the parties and their children. The divorce was granted Alice V. Fiske October 10, 1923, the terms of the trust becoming a part of the decree.

The corpus of the trust consists of certain real estate known as the Fiske building at the northwest corner of Nicollet avenue and Eleventh street in Minneapolis. It was then subject to a lease for 100 years from April 1, 1920, which yielded $12,500 per annum net, and which by its terms called for increased rentals from time to time so that ultimately it was intended to result in net income of $23,600 per annum.

Douglas A. Fiske was 56 years and Alice V. Fiske 53 years of age when the trust was executed. They then had two children—a son, Torrance, 31 years of age, and a daughter, Lois Fiske Peppard, 29 years of age. Torrance was then a widower with no living child.

Lois had two daughters—Lois (now Lois Hutchins) and Alice (now Alice McIntyre), respectively three years, and eight months of age.

The paragraphs of the trust material to the question to be determined here are as follows:

## "(I)

"The said parties of the second part [the trustees] * * * shall hold said property during the lives of the said Douglas A. Fiske and the said Alice V. Fiske * * * and during the lives of Torrance Fiske and Lois Fiske Peppard, children of said first parties, and during the lives of Lois Peppard and Alice Torrance Peppard, children of said Lois Fiske Peppard, and during the life of the survivor of said six (6) persons last above named; and shall * * * apply the net annual rent, income and profits from said trust estate and property, as follows, to-wit:

"First: Twelve Thousand Dollars ($12,000) such net annual income shall be paid over annually by the trustees of Alice V. Fiske, one of the parties of the first part, *during the term of her natural life,* such annual payment of said Twelve Thousand Dollars ($12,000) to be made in equal monthly installments of One Thousand Dollars ($1,000) each, on or before the fifteenth (15th) day of each month, *during the term of her natural life; if in any year during the life of Alice V. Fiske the net annual income from said trust estate is not sufficient to pay the said Alice V. Fiske the sum of Twelve Thousand Dollars ($12,000.00), then, and in such event, any deficiency in such payment shall be paid to said Alice V. Fiske out of the net income from said trust estate thereafter accruing, until all such deficiencies so accruing shall be paid to said Alice V. Fiske.*

"Second: All of the net annual rent, income and profits from said trust property and estate, in excess of Twelve Thousand Dollars ($12,000.00) per annum, plus the amount necessary to make good any deficiencies in the payments in prior years *to Alice V. Fiske* under Subdivision First of this Subdivision I, shall be paid annually by the Trustees to the said Douglas A. Fiske, one of the parties of the first part, during the term of his natural life, * * *.

"THIRD: All of the annual net rent, income and profits of said trust estate, except such as is provided to be paid to Alice V. Fiske or Douglas A. Fiske, at the time and for the periods as provided in Subdivision First and Second of this Subdivision I, shall be paid by the Trustees, one-half (1/2) thereof to Torrance Fiske, so long as he survives, and one-half (1/2) thereof to Lois Fiske Peppard, so long as she survives.

"In the event of the death of said Torrance Fiske during the continuance of this Trust, the share in said net annual rents, income and profits from said Trust Estate, which the said Torrance Fiske would have received had he survived, shall be paid, in the event he leaves a wife and issue surviving him, during the continuance of this trust, one-third (1/3) to his wife so surviving him as long as she survives, and two-thirds (2/3) to his issue so surviving him, as long as his issue survive; * * *.

"In the event of the death of said Lois Fiske Peppard during the continuance of this Trust, the share in said net annual rents, income and profits from said Trust Estate, which the said Lois Fiske Peppard would have received had she survived, shall be paid, in the event she leaves a husband and issue surviving her, during the continuance of this Trust, one-third (1/3) to her husband so surviving her as long as he survives, and two-thirds (2/3) to her issue so surviving her, as long as her issue survive; * * *.

* * * * *

"II.

"On the death of the survivor of said Douglas A. Fiske, Alice V. Fiske, Torrance Fiske, Lois Fiske Peppard, Alice Torrance Peppard and Lois Peppard, the principal of said trust estate shall be distributed as follows:

"One-half (1/2) thereof shall be distributed as follows: One-third (1/3) of such half to the widow of Torrance Fiske, if he has left a widow who is then surviving, and two-thirds (2/3) of said half of said trust estate, to the issue of said Torrance Fiske, * * *.

"The other half of the principal of said trust estate, on the death of the survivor of the six (6) persons upon whose lives this trust is

limited, shall be distributed as follows: One-third (1/3) of such half to the husband of Lois Fiske Peppard, if she has left a husband who is then surviving, and two-thirds (2/3) of said half of said trust estate, to the issue of said Lois Fiske Peppard, * * *.

* * * * *

"VIII.

"It is the intention that *at the end* of each year the trustees shall pay over to the beneficiaries entitled to share in the income from said trust estate, their share of the net income payable for such year which is so closing, * * *." (Italics supplied.)

In the divorce proceedings, the parties entered into a written stipulation which provided:

"The parties hereto agree to forthwith sign and acknowledge in duplicate a Trust Deed, a copy of which is hereto attached and marked Exhibit 'A,' [the trust instrument now involved in these proceedings] * * * and, in the event of the plaintiff procuring a Decree of Absolute Divorce * * *.

* * * * *

"The provisions * * * made for * * * plaintiff [Alice V. Fiske] by the Trust Deed * * * are in lieu of alimony and all other provisions, allowances or interest of any kind in the estate, property and earnings of the defendant, * * *."

In its decree for divorce the court ordered judgment:

"* * * that the provisions heretofore made for the plaintiff [in stipulation for settlement] have been accepted by the plaintiff and are in lieu of alimony and all other provisions, allowances or interest of any kind of or for the plaintiff in the estate, property or earnings of the defendant; and the plaintiff is barred from all interest or participation in the estate, property or earnings of the defendant, and shall have no further right, title or interest in the estate, property or earnings of the defendant."

Douglas A. Fiske died January 28, 1928. Torrance Fiske died March 26, 1929, and, having married subsequent to the execution of the trust, left a surviving spouse, Harriet S. Fiske, and a son,

458

Timothy Fiske, formerly known as Scofield Fiske, born August 27, 1928. In 1934 Harriet S. Fiske married Sigurd Ueland and is now known as Harriet S. Ueland. In 1926 Lois Fiske Peppard was divorced from Melville J. Peppard. In 1933 she married Donovan O. Peters and is known as Lois Fiske Peters. Her two daughters are both married, Lois now being known as Lois Hutchins, and Alice, as Alice McIntyre.

Subsequently Alice V. Fiske, the divorced wife of Douglas A. Fiske, remarried and her name became Alice V. Orde, but she will be referred to herein as Alice V. Fiske. She died in California on March 30, 1951. Her will admitted to probate in California provided that after payment of certain specific bequests all of the residue of her property "wheresoever situated and of whatever nature" be devised and bequeathed to her daughter, Lois Fiske Peters, and the latter's husband, Donovan O. Peters, or to the survivor of them, and provided that if both were then deceased the entire residue in equal shares should go to her granddaughters, Polly and Alice. Lois Fiske Peters and her husband, Donovan O. Peters, residents of California, were named and appointed executors under such will.

Following the divorce of Douglas A. Fiske and Alice V. Fiske, the net income from the trust was sufficient to pay Alice V. Fiske the sum of $12,000 per year as provided therein through 1929. In the years that followed, the income was substantially reduced, and finally the lease was terminated. The real property transferred under the trust is still held in trust by the present trustee. While in the years immediately preceding the death of Mrs. Fiske the income had been sufficient to pay her the full $12,000 per year provided for in the trust agreement, for some years before that it had been inadequate to secure this amount. At the time of her death these shortages had resulted in a total deficiency of $153,687.20. It is this sum which forms the principal issue of the present controversy.

It is the contention of Lois Fiske Peters and Donovan O. Peters, as executors of the last will of Alice V. Fiske, that, before any distribution of income can be made to the present beneficiaries, under

subdivision THIRD of paragraph I of the trust instrument the entire $153,687.20 and interest thereon must be paid out of the trust income to the estate of Alice V. Fiske or to her residuary legatees. It is the contention of Harriet S. Ueland, the widow of Torrance Fiske, and Timothy Fiske, the son of Torrance Fiske, that under subdivision FIRST of paragraph I, the right to have deficiencies paid from subsequent income was personal to Alice V. Fiske and terminated with her death; and that they are entitled to immediate payment of that portion of the income of the trust provided for them under subdivision THIRD of paragraph I.

The trustee petitioned the district court of Hennepin county for an order construing the trust instrument and instructing it as to the distribution of (1) net income in the sum of $4,281.69 advanced and undistributed up to March 30, 1951, the date of death of said Alice V. Fiske, and (2) income accruing subsequent to March 30, 1951. The matter was submitted upon a stipulation of facts in accordance with those above outlined. Based thereon the trial court made findings and ordered judgment to the effect that the deficiency clause was personal to Alice V. Fiske and did not survive her; that neither the executors of her estate nor the residuary legatees under her will had any right to the deficiencies described; and that the net income, including undistributed income up to the date of death of Alice V. Fiske as well as income accruing thereafter, be distributed:

"One-sixth (1/6) thereof to Harriet S. Ueland;
"One-third (1/3) thereof to Timothy Fiske;
"One-half (1/2) thereof to Lois Fiske Peters."

This is an appeal from such order.

■ The precise question involved here has not heretofore been considered by this court although we have held that a provision calling for payments to a designated beneficiary in the nature of an annuity for support was personal to such beneficiary (Moline v. Kotch, 213 Minn. 326, 6 N. W. [2d] 462; Malicki v. Malicki, 189 Minn. 121, 248 N. W. 723; Gamble v. Mosloski, 187 Minn. 640, 246 N. W. 368); and that the settlor of property in trust, in the free exercise of his will, may limit income benefits therefrom to persons

of his choice to the exclusion of creditors and others. In re Trust Created by Moulton, 233 Minn. 286, 46 N. W. (2d) 667, 24 A. L. R. (2d) 1092; First Nat. Bank v. Olufson, 181 Minn. 289, 232 N. W. 337.

■ Several well-established principles govern consideration of the question to be determined. Of primary importance in a trust is the intention of the settlor, which, where its language is clear, must be ascertained from the trust instrument in its entirety. In re Trusts Created by Butler, 223 Minn. 196, 26 N. W. (2d) 204, 172 A. L. R. 977; In re Trust Created by Watland, 211 Minn. 84, 300 N. W. 195. Under all circumstances it must be construed to carry out the main object of the settlor as disclosed by its terms notwithstanding inaccuracies of expression, ineffectiveness of terms, or the presence of provisions therein which on their face appear inconsistent therewith. Andrews v. Wells-Dickey Trust Co. 163 Minn. 35, 203 N. W. 439, 205 N. W. 65.

In arriving at the intent of the settlor of a trust the court is not at liberty to disregard the plain language of the terms employed in the trust instrument; to insert or add words thereto; to substitute other words for those used therein; or to engraft inconsistent limitations thereon. In re Trusts Under Will of McCann, 212 Minn. 233, 3 N. W. (2d) 226; In re Trusteeship Created Under Will of Ordean, 195 Minn. 120, 261 N. W. 706; 54 Am. Jur., Trusts, § 17. It is fundamental that words used must be given their ordinary meaning unless it clearly appears that they were otherwise used or that an unreasonable or absurd result will follow therefrom. Wm. Lindeke Land Co. v. Kalman, 190 Minn. 601, 252 N. W. 650, 93 A. L. R. 1393; 54 Am. Jur., Trusts, § 18.

■ In conformity with the foregoing, it follows that the period during which annual installments from the income of a trust, or deficiencies therein, are to be paid is governed by the intention of the settlor as expressed in the language of the trust instrument providing for such payments. Merrill v. Baptist Union, 73 N. H. 414, 62 A. 647, 3 L.R.A.(N.S.) 1143; 2 Am. Jur., Annuities, § 8. Where, by the terms thereof, annual payments are required for the lifetime of a beneficiary designated to receive them, they are limited to such

period, and deficiencies therein may not be discharged out of income accruing after the death of the beneficiary. Thus, trust provisions which direct annual payments out of rents and profits for the life of the beneficiary;[2] which call for annual casting of accounts and annual disposition of the entire income to designated beneficiaries;[3] which make provision for distribution of principal immediately upon the death of the beneficiary;[4] or which require distribution of income to other beneficiaries immediately thereafter under a new trust[5] have been held to manifest settlor's intent that required annual payments are limited to the lifetime of the beneficiary, and that deficiencies therein may not be secured from income subsequently accruing.

On the other hand, provisions of a trust which plainly evidence settlor's intent that fixed annual payments provided therein are to be a charge on all of the general income thereof,[6] which subject the corpus of the estate to a charge therefor,[7] or which make specified payments to other beneficiaries subject thereto[8] have been construed to require that deficiencies in such payments be charged against income accruing subsequent to the death of the beneficiary, or against the corpus of the trust if it so provides.

[2]Union Trust Co. v. Fisher, 240 Mich. 68, 214 N. W. 941; Taylor v. Albree, 317 Mass. 57, 56 N. E. (2d) 904; Kelly v. Casey, 62 Hun 467, 17 N. Y. S. 86; Anderson v. Hammond, 70 Tenn. 281, 31 Am. R. 612; Neal v. Hanbury, 24 Eng. Reprint 83.

[3]Fate v. Fate, 295 Ill. App. 271, 14 N. E. (2d) 890; Bridgeport-City Trust Co. v. Leeds, 134 Conn. 133, 55 A. (2d) 869; Brock Estate, 156 Pa. Super. 616, 41 A. (2d) 347.

[4]Estate of Markham, 28 Cal. (2d) 69, 168 P. (2d) 669; In re Estate of Towle, 242 Iowa 1102, 49 N. W. (2d) 558.

[5]In re Bigge, 76 L. J. Rep. (Ch. Div.) 413, 96 L. T. Rep. N. S. 903; Foster v. Smith, 41 Eng. Reprint 772.

[6]Reed's Estate, 236 Pa. 572, 85 A. 15; Veeser v. Stenglein, 314 Mich. 29, 22 N. W. (2d) 59.

[7]Johnson v. McClure, 5 Wash. (2d) 123, 104 P. (2d) 962; In re Estate of Ellertson, 157 Kan. 492, 142 P. (2d) 724.

[8]Reed's Estate, 236 Pa. 572, 85 A. 15; Booth v. Coulton, 5 L. R. Ch. 684, 39 L. J. Rep. N. S. (Ch. Div.) 622.

462

■ Examination of the language of the trust here is convincing that the general object and intent of the settlors was to dispose of the trust property in such a way that (1) Alice V. Fiske, *during her lifetime,* in lieu of alimony would receive specified annual payments from annual net income derived therefrom; (2) any deficiencies therein would be paid *to her* only from income accruing during her lifetime; (3) the remainder, if any, of such income would go to Douglas A. Fiske during his lifetime; (4) upon the death of either settlor, his or her portion of such income would go equally to their children or their representatives, as provided in paragraph I, subdivision THIRD; and (5) upon the death of the survivor of the six beneficiaries named in the trust, the principal thereof would go, one-half to the surviving spouse and issue of the son of the settlors; and one-half to the surviving spouse and issue of their daughter.

■ In line with these main objectives in subdivision FIRST of paragraph I of the trust, the settlors expressed their intent that the $12,000 per annum to be paid Alice V. Fiske should go to her only "during the term of her natural life," and likewise limited required installment dates to "the term of her natural life." That they did not intend that deficiencies in these required payments should be subject to her testamentary disposition, or become the property of anyone except other designated beneficiaries, is evidenced by the clause therein limiting payment of "all such deficiencies" to "said Alice V. Fiske" and by subdivision THIRD of paragraph I requiring that all net income, except that payable to Alice V. Fiske or Douglas A. Fiske "at the time" and "for the periods" provided in the trust, be paid to other designated beneficiaries. "At the time" obviously has reference to specified installment dates arising during the life of Alice V. Fiske or Douglas A. Fiske, and "for the periods" has definite reference to the terms of their respective natural lives as expressed in subdivisions FIRST and SECOND of paragraph I.

■ Other provisions in the trust instrument lend support to our conclusion. Paragraph II thereof provides that it shall terminate upon the death of the survivor of the settlors, their children, and those of their grandchildren named in the instrument, at which

time distribution of the principal is to be made. If the settlors intended that deficiencies in the payments for Alice V. Fiske should come from trust income subsequent to her death; or that she should have testamentary power over the disposition thereof; or that their children and grandchildren, who were the main objects of their bounty, should be denied any portion of the trust income during the long period which might be required to make up such deficiencies, some reference thereto would have been clearly set forth, with an alternative termination date effective upon full payment thereof.

Based upon all of the foregoing considerations, we hold that settlors did not intend that deficiencies in the payments required to be made to Alice V. Fiske should be a charge against the general income of the trust so as to be secured therefrom after her death.

At the death of Alice V. Fiske there remained undistributed an accumulation of $4,281.69 over and above expenses from trust income. We are of the opinion that this sum belongs to her estate. Held v. Keller, 135 Minn. 192, 160 N. W. 487. In the Held case, a testamentary trust provided that the entire net income from the trust property be paid to the wife of testator "semiannually during the term of her natural life, as and for her absolute property" and that upon her death the trust property should pass to legatees therein named. At the death of the wife certain income had been received and was held by the trustee, while other income had accrued but remained uncollected. In upholding the claim of the executor of the wife's estate to such accumulations and accruals, this court stated (135 Minn. 196, 160 N. W. 489):

"* * * It seems clear * * * that the intention * * * was to vest * * * the absolute title and right to all income * * * [in the wife] from day to day as the income accumulated. * * * The fact that the trustees were required to pay the income over semiannually, does not change the effect of the grant or render it any the less absolute. * * * the general rule * * * [is] that the death between the regular periods of payment of one to whom the income of an estate is given for life, does not defeat the right of his administrator to all the income which accrued since the last payment; and all

thereof accruing prior to the death belongs to the estate of the beneficiary."

The facts in the instant case appear to require application of the principles expressed in the Held case. It follows that under the trust appellants are entitled to the $4,281.69 described, and the case is remanded with directions to modify and amend the conclusions and order for judgment to the extent that this sum be ordered paid by the trustee in accordance herewith.

As modified, the order appealed from is affirmed.