## Horton *against* Cook.

The grant of an annuity, out of whatever payable, *prima facie* binds the person of the grantor; and the implication, from it, of a covenant to pay, can be rebutted only by a plain intent, apparent on the face of the instrument, that the annuitant should resort only to a specific fund: Hence, a promise to pay the annuity in consideration of forbearance to sue the personal representatives of the grantor, is binding, and may be enforced against the promissor.

ERROR to the common pleas of *Northumberland* county.

John Taggert and John Porter, administrators of Sarah Cook, deceased, against Jesse C. Horton.

This was an action of *assumpsit*, founded upon the following facts:—William Cook, the elder, by his last will, devised his estate, real and personal, to his widow, Sarah Cook, the plaintiff's intestate, and his son, William Cook. Subsequently, on May 23, 1814, William Cook, Jun. conveyed a tract of land devised to him by his father to George Grant, for the consideration of 21,000 dollars; and took a mortgage and bonds to secure the payment of 16,999 dollars of the same. On the same day, to secure the interests of his mother, William Cook executed the following indenture:

" This indenture, made May 23, 1814, between William Cook of the one part, and Sarah Cook of the other part. Whereas the said Sarah Cook, under the last will and testament of her late husband, is entitled to certain rents, &c. &c., in consideration whereof, and of the sum of one dollar, to her paid, the said William Cook hath given, granted, and confirmed, and by these presents doth give, grant, and confirm, unto the said Sarah Cook, during her natural life, one annuity or yearly income of 312 dollars money aforesaid, to be received, paid, had, issuing and forthcoming, out of the following description of property, viz: a mortgage, accompanied with three bonds, of George Grant to William Cook, all bearing date the 23d May 1814, conditioned for the sum of 19,999 dollars and 99 cents, money aforesaid, with lawful interest, from the first day of May last past, in consideration of real property, purchased by the said George Grant from the said William, the present grantor, the said annuity or yearly income, to be paid by said George to said Sarah, out of the yearly interest arising and accruing on the aforesaid capital sum; and I, the said William, do for myself, my heirs, executors and administrators, authorize and empower the said George Grant, his heirs, executors and administrators, to retain in his or their hands, yearly and every year, during the lifetime of said Sarah, so much of the capital sum that the interest will amount to the aforesaid sum

of 312 dollars, and the same to pay over yearly and every year during her natural life, or quarterly, or half yearly, as he may think proper; and her receipt to him shall be good against me for so much, and provided said George may think proper to pay over to me the whole amount of the money due on said mortgage, then I do bind myself, my heirs, &c., to put to interest so much of said capital sum, the interest of which will amount to the annuity aforesaid of 312 dollars, and to permit and authorize her to draw and receive the same annuity, to commence from the date aforesaid. To have and to hold said annuity, or yearly income, unto the said Sarah during her natural life, at which period it is to cease and determine."

In 1821 William Cook, Jun. died, and by his will gave two-thirds of his estate to his wife, Martha Cook, and one-third to his son, William L. Cook. Sarah Cook died July 29, 1822. Jesse C. Horton, the defendant, married Martha Cook, the widow of William Cook, Jun. After the death of Sarah Cook there was due to her estate a large portion of her annuity; to recover which this suit was brought in 1838. To maintain which the plaintiff offered to prove that, after the marriage of the defendant with Martha Cook, he promised to pay the arrearages of the annuity due to Sarah Cook, in consideration that her personal representatives would forbear to sue the representatives of William Cook, Jun. for the recovery thereof: and that he would pay the same as soon as he could get possession of the land mortgaged by George Grant, as recited in the indenture: That after his said promise, in 1830, the said Jesse C. Horton and wife sued the said mortgage against George Grant, obtained a judgment, issued execution, and sold the land and purchased it; the deed being made to himself and William L. Cook, the other devisee of William Cook, Jun., in 1832, for the consideration of 4730 dollars, and that they were now in possession of it.

To this evidence the defendant objected, on three grounds:

1. Because William Cook was not personally indebted to Sarah Cook.

2. That William Cook, Jun. died in 1821, and if there was then any claim upon his estate, it was gone in 1832.

3. That there was no consideration for the promise.

The court overruled the objections, and the evidence was given. To which the defendants excepted.

The defendants requested the court to charge the jury upon the following points:

1. That William Cook, Jun. was not personally liable for any part of the plaintiff's claim.

2. That the promise of the defendant is void, for want of consideration.

3. That if the defendant be liable at all, it is only for such proportion of the plaintiff's claim as the whole bears to the amount for which the mortgaged property sold.

4. That, at all events, the defendant can only be liable for one-

half of the plaintiff's claim; having possessed himself of but one-half of the mortgaged premises.

5. That William Cook, Jun. was not liable for any interest accruing after May 23, 1821, the time of his death.

6. That the defendant's promise is applicable only to such sum as William Cook, Jun. owed at the time of his death, and there being no evidence of breach of covenant, or other liability of his in his lifetime, the verdict should be for the defendant.

The court refused to give the instructions prayed for in the first, second, third and fifth points; and remarked, in reference to the fourth point, " that if there was no evidence to show that defendant knew, at the time of the promise, of William L. Cook's interest in the mortgage, and that Jesse C. Horton voluntarily joined with him in the purchase, and voluntarily took possession with him, as tenant in common, there might be ground for the inference, that Horton, when he spoke of getting possession, referred to an exclusive possession of the whole tract, but under the evidence that he knew all about the interest of William L. Cook, shortly after his marriage with Martha Cook, and voluntarily joined him in the purchase, and in the possession as tenants in common, there is sufficient to justify the belief, that he referred, when he made the promise, to no other or greater possession than that which he now has; and, therefore, the court refuse to give the instructions desired in the fourth point.

"It is true, as stated in the first part of the sixth point, that the promise of defendant is applicable only to such sum as William Cook owed to Sarah Cook at the time of his decease, but the remaining part of the point does not follow as a correct conclusion, from the premises, nor is the residue of the point assented to. In confining the promise to the money owed by William Cook at the time of his death, it is not intended to limit the recovery to the amount payable in the lifetime of William Cook. If William Cook granted the annuity to Sarah Cook, to be paid yearly during her life, out of the mortgage against George Grant, for a valuable consideration received from Sarah Cook, and refused to convey to Grant a title to the M'Cully tract, which he contracted with Grant to convey, as part consideration of the mortgage, and thus furnished Grant with a defence against the mortgage, of which he availed himself, the debt may be considered as owing by William Cook in his lifetime, although payable in instalments, some of which became due after his death.

" The court further instructed the jury, that if they believed the testimony of Jacob Cook, George Grant, and E. Greenough, they may find for the plaintiffs the amount due Sarah Cook for her annuity at the time of her death, on July 29, 1822, and interest on the same from that time."

The errors assigned were to the opinion of the court, admitting the evidence, and in their answers to each of the defendant's points.

*Greenough,* for plaintiff in error.
*Donnel* and *Jordan,* for defendant in error.

The opinion of the court was delivered by

GIBSON, C. J.—If the grantor was personally bound for payment of the annuity, the promise to pay in consideration of forbearance to sue his executors, equally binds the defendant; and that is not controverted.　It is urged, however, that what has been called an annuity, was no more than an assignment of a portion of the interest accruing on the bonds and mortgage.　But the grant of an annuity in terms, out of whatever payable, *prima facie* binds the person; and the implication from it of a covenant to pay, can be rebutted only by a plain intent apparent on the face of the instrument, that the annuitant should resort only to a specific fund.　An annuity is an annual duty charged upon the person of the grantor only; *Co. Lit.* 441, *b.;* but the grantee of a rent charge, which is not a pure annuity, may charge the land by a distress or an assise, or the person of the grantor by a writ of annuity at his election. *Lit. sect.* 219.　Now the grant, in this case, is stronger to charge the person, than the grant of a rent charge; for the subject of it is designated as an annuity in terms, and *ex vi termini,* the word imports the grant of a sum in gross, "so that no freehold be charged therewith;" *Terms de Ley* 44: that is, as annuity; for it may certainly be charged on land in the shape of a rent.　If it issue out of land, as by the modern practice it often does, the annuitant may make it personal or real, at his option; and though he may have a writ of annuity after a distress, he may do so only where he has not avowed in replevin, or brought an assise, which also is an election of record.　But that the word annuity is the proper one to charge the person, is further manifest from the fact, that no writ of annuity lies for a rent created by reservation.　It is said in the Law Dictionary, *verbo* Annuity, that there are few modern grants of annuities without a covenant for payment, express or implied; and that an action of covenant is usually brought instead of a writ of annuity, which is much out of use.　What, then, is there to rebut the implication of such a covenant on the face of this instrument? The annuitant was not a beneficiary, but a purchaser; and the interpretation is to be as favourable to her as the words will bear. Payment was directed to be made out of the produce of purchase-money, secured by bond and mortgage, an adequate portion of the principal being left in the mortgagor's hands, or agreed to be put out at interest by the grantor, should it be paid over to him.　If the grant then were construed to be only an assignment of the fund, it is evident that the grantee's security would be proportionately decreased; and it follows not that the designation of a particular fund for payment, has the effect of discharging the grantor's responsibility.　Such is the case of a rent charge, and such also was the case in 1 *Roll. Abr.* 227, of an annuity receivable out of a par-

[Horton v. Cook.]

ticular bag of money, or out of the grantor's coffers, or from a stranger. Besides, it is difficult to say what remedy this annuitant could have had against the mortgagor; or how, in a suit on the bonds, she could have recovered in the name of the obligee, just so much of the interest as would satisfy her annuity and no more; or how, in the event of the obligor's insolvency, which has since happened, she could have had repeated recourse to the land which has since been sold on the mortgage, and ceased to be a security for her demand. A construction that would expose her to the risk of such events, without recourse to any guaranty, would be plainly unreasonable and unjust. But that to find the means of satisfaction was to be the grantor's business, is evident from his covenant to put the principal at interest for her use, when it should be paid into his hands. His being the hand to receive and pay out, she could look to no other. He might have put the money out on merely personal security, and not even of her choosing; on which it is unreasonable to suppose that she consented to rely. The grantor, then, having used apt words to charge his person, and having used none else to restrain their natural and technical effect, we must take it that he consented to be personally bound; and, consequently, that there was a sufficient consideration for the defendant's promise.

Judgment affirmed.