## Francis E. Brewster's Appeal.

## Estate of Priscilla Smethurst, Deceased.

The terms of a will, where there was a shortage of anticipated income, considered.

(Argued January 24, 1888.　Decided February 6, 1888.)

January Term, 1888, No. 44, E. D., before GORDON, Ch. J., PAXSON, STERRETT, GREEN, and CLARK, JJ.　Appeal from a decree of the Orphans' Court of Philadelphia County dismissing exceptions to the adjudication of an executor's account.　Affirmed.

Priscilla Smethurst died January 23, 1853, leaving a will by which she provided, *inter alia,* as follows:

"Second. *Item,* All the rest, residue, and remainder of my estate, real, personal, and mixed, whatsoever and wheresoever, I give, devise, and bequeath unto my executors hereinafter named, their heirs, executors, administrators, and assigns forever—in trust nevertheless to, for, and upon the following uses, intents, and purposes, that is to say: To have, take, and receive the rents, income, interest, dividends, and profits thereof, and to pay and apply the sum of $1,000, part thereof, in and towards the maintenance and education of my children, subject to the directions hereinafter given, relative to the same, the said $1,000 to be divided into as many equal parts as I leave children surviving me, and the balance or remainder of the said income to appropriate towards the payment of the principal of all mortgages, ground rents, or other encumbrances whatsoever; and from and immediately after the payment of all encumbrances whatsoever, against my said estate, to invest said balance of income so as to form a part and principal of my said estate, to be

held in trust as herein indicated and set forth. And upon the arrival of my children at full age, then, so far as the shares of my sons are concerned, in trust to pay to my said sons their proportion of the $1,000 until he or they shall arrive at the age of twenty-five years; and at and upon his or their arrival at such age then to pay over, transfer, and assign to said sons his or their full and entire proportion of my estate. And so far as the shares of my daughters are concerned, in trust to have, hold, receive, and take the rents, interest, income, dividends, and profits thereof, and to pay the same to my said daughters for their sole and separate use, free and discharged from the debts, obligations, control, interference, or anticipation of any husband or husbands of my said daughters, or either or any of them, but to receive only their proportion of the $1,000 until she or they arrive at the age of twenty-five years, and from and immediately after the decease of my said daughters or either or any of them to have, hold, pay, and distribute the share of such deceased daughter in such manner and way as she by her last will . . . shall direct. . . . Provided, however, that, in case my said executor shall deem it proper, it shall and may be lawful for them at the arrival of either of my sons at the age of twenty-one years, or between said age and twenty-five, to give and advance to such son or sons a sum of money not exceeding one half of his whole and entire share to set him up in business. And in like manner upon the marriage of either of my said daughters it shall be lawful for my executors, if they deem the same proper, to pay and advance to such daughter a sum of money not exceeding $500 to procure furniture for her; and it shall further be lawful for said executors, if they deem the same proper, to give and advance to such of my daughters as may desire the same after their arrival at full age, and whether married or not, a sum not exceeding, together with such amount as may be advanced for furniture as aforesaid, one half of her whole and entire share. And provided further, that in case either of my sons shall die under the age of twenty-five years leaving issue his part and share shall be equally divided among such issue and should either of my sons die between the ages of twenty-one and twenty-five, either with or without issue surviving him, but leaving a last will and testament, his part or share shall be paid and distributed as directed and set forth in such last will and testament; and in the event of the death of

either or any of my said children during their, his, or her minority, leaving lawful issue, such issue to take only the part or share that his, her, or their deceased parent or parents would have taken if living. . . .

"I desire and request that all my children except William shall be sent to my sister, Margaret, in Manchester, England, to be kept, maintained, educated, and provided for by her during their minority, and direct that portion of my income which I divide between my children to which said minors are entitled to be paid annually by my said executors to my said sister for that purpose; and further that the share of my son William shall contribute and pay $52 per annum to my said sister. In case any of my children shall not desire to remain with my said sister during their minority, then I direct my executors to pay the sum of $52 per annum from the share of such child to my sister during her natural life, my said sister to receive the full proportion of the said $1,000 of such of my children as remain with her until they are respectively twenty-one years of age, and $52 per annum from each of the other shares, for and during the term of her natural life. And I hereby direct my executors in paying the shares coming to my sons to retain from each share a sum sufficient to yield the clear income of $260 per annum to be paid to my sister during all the term of her natural life—including, of course, the share of my son William, the like sum to be paid from the interest and income of each of my daughters' shares, and a like sum retained from each share in every event and upon the death of any of my children to meet such payment, the principal after the decease of my said sister to be deemed and considered as belonging to the son, daughter, or his or her share from whom the same was retained—my object and desire being to provide for my sister an annual payment of $260 per annum out of my estate during all the term of her natural life, and which I hereby direct to be paid to her."

By a codicil she directed that if at any time her sons or daughters should get into difficulties, her executors should have the power to advance what money they should think proper to relieve such sons or daughters.

She left five children: William A. Smethurst, Priscilla M. (now) Vanderford, Robert, Thomas M., and Alice E. Smethurst. William attained full age October 18, 1854; Alice, Sep-

tember 11, 1857; Robert, October 11, 1859; Priscilla, December 11, 1861; and Thomas, October 13, 1864.

Mr. Brewster, as administrator in Pennsylvania of the estate of Margaret Robinson, deceased, who died July 7, 1882, presented a claim under the will, in the sum of $5,191.69, for arrears of annuity given by the will as compensation for the care and tuition of testatrix's minor children.

It was shown that Priscilla remained with the claimant six and a half years; Robert, seven years, and Thomas, eighteen and a half years; and compensation at the rate of $200 per annum from each of them during the respective periods of their stay and $52 per annum during the time they were not under the care of the claimant, up to the time of her death, was demanded. The sum of $52 per year each from Wm. Smethurst and from Alice Smethurst was also included in the claim.

The auditing judge, ASHMAN, found: "That the yearly contribution of $52 from the share of each child, which was directed to be paid to the claimant, was payable from the date of testatrix's death. In express terms the decedent, in ordering that contribution, declared her intent to be to provide for her sister an annuity of $260; and this, under all the authorities, would commence at her death. But the only fixed sum which the claimant took under the will was this annuity. Her compensation for services to the minor children was, in the language of the testatrix, 'the full proportion of the said $1,000 of such of my children as remain with her, until they are respectively twenty-one years of age.' In another part of the will, the testatrix says: 'I direct that portion of my income which I divide between my said children, to which said minors are entitled, to be paid annually by my executors to my said sister.' That portion of the income of her estate was $1,000, and the share of each child therein was $200. But it was payable out of income; and if the income of the estate fell short of the amount, the children could claim only to the extent of the income. It would probably be held that a deficit in one year could be made good by the surplus in a succeeding year. That point, however, does not come up, for the reason that in the twenty-eight years during which some one or more of the children lived with the claimant, the total net income of the estate amounted only to $18,781.13, which was an average yearly sum of

$670.75. The claim will be computed, and, when computed, allowed as follows, and the accountant will reimburse himself out of the future shares of the respective *cestuis que trust*:

"I. The claimant will be allowed $52 per annum, dating from testatrix's death, from the share of each child who did not reside with her; and $52 per annum from the share of each remaining child, for the period during which such child did not reside with her.

"II. She will be allowed $200 per annum during the stay of each child who lived with her, where the yearly income of the estate would permit that payment; where the income would not, she will be allowed a *pro rata* share of $200, to be graded by the actual income of the estate.

"III. Upon the balance which may remain, after deducting from the sum thus found, the payments which were made to the claimant, she will be awarded interest, which will be ascertained by averaging the dates and amounts of the yearly sums due her, and the dates and amount of the moneys received by her on account."

Exceptions filed to the adjudication were dismissed by the court, and the adjudication confirmed.

The court filed the following opinion:

Upon an examination of the second item of the will, it is apparent that testatrix anticipated her estate would yield at least a clear annual income of $1,000. And as she left five children, she directed the trustees to expend that amount for their maintenance and education, in the proportion of $200 for each child. There is no direction that if the net income should not yield $1,000, any deficiency should be supplied, either from the principal or from the income of any succeeding year, should it be in excess thereof. The expense of the education, etc., of the children depended wholly upon the income collected by the trustees. If it amounted to $1,000, then one fifth was to be so expended upon each child; but if less, then a like proportion of the actual net income.

That this is the proper construction of the will, and as placed upon it by the auditing judge, we do not think there can be any doubt; and it is rendered still clearer by its succeeding provisions.

But testatrix also provided for the care and education of her

children, and expenditure of the sum she set apart for these objects. These duties were not committed to the trustees, but she directed that all of her children, except one son, should be sent to her sister in England, to be kept, maintained, educated, and provided for by her during their minority. And she enjoined upon the trustees to pay to the sister the share of the said sum of $1,000, out of the income to which each child, placed in her care, would be entitled, for the purposes mentioned. As four children were to be committed to the care of the sister, she was to receive $800 per annum, and the remaining child, the son, was entitled to his one fifth, in his own right, less $52 per annum, to be deducted from his share and paid to her sister. So that if the net income amounted to $1,000 per annum, the latter would be entitled, during the minority of the four children, to $800, and $52 from the share of the son—in all $852 per annum.

But testatrix also contemplated the unwillingness of some of her children to remain with their aunt. In that event she directed that her sister should receive out of the share of the child or children who declined to reside with her during their minority, the sum of $52 per annum during her natural life, at the same time receiving the share of the income of each child who continued to reside with her until his or her majority.

It will be observed that testatrix directed the deduction of $52 per annum out of the share of her son whom she did not intend to reside with her sister. This sum, it appears, is one fifth part of the annuity of $260, which testatrix intended her sister to receive out of the share of the income to which each of her children would be entitled. The sum of $52 was not to be deducted from the shares of the children who resided with their aunt during their minority. As long as they remained with her, she was entitled to their entire share of the $1,000 income; or, if less than that sum, to their proportionate shares; but, if they declined to live with her, then she was to be paid $52 per annum for life out of their shares of the income.

And finally, testatrix directed the payment of $260 per annum to her sister out of her entire estate, by the provision that when her sons attained twenty-five years of age each should be entitled to his share of her estate, after the setting apart by the executors of a sum sufficient to pay his one fifth part of the annuity, and a like proportion to be deducted from the in-

come of the daughters' share, the principal being held in trust for them for life.

We have thus outlined what appears to us as the scheme of distribution contemplated by testatrix, so far as relates to the account now before us. The result is that the sister of testatrix is entitled to receive from the trustees: First, the shares of the income to which the children were entitled who resided with her during their minority—if it amounted to $1,000 or less, their one fifth part thereof; second, the sum of $52 per annum from the shares of the children who did not reside with her; and third, an annuity of $260 from the income of the entire estate for life.

The annuitant died July 7, 1882; and her administrator is entitled to the arrears of the annuity, with interest, less the payments made by the trustees on account thereof, with interest. A statement of the amount of net income to the death of the annuitant, in accordance with the principles stated, shows that the same amounted to $7,877.18, and the payments made by the trustee amounted to $6,895.56, leaving due the annuitant $981.-62. But by averaging the interest upon the amounts of income due, and upon the payments made, in some years largely in excess of the shares of income of the children, and her annuity, the annuitant is found to have been overpaid by the trustees. . . . The exceptions are dismissed.

The assignments of error specified the action of the court: (1) In deciding that, as the income of the estate for several years fell short of $1,000, the deficit in the payment to Mrs. Robinson for annuity and compensation for support of children, caused by such shortage of income, could not be made up from surplus income in succeeding years; (2) in abating the claim of Mrs. Robinson's administrator for the annuity of $260 and compensation for support of testatrix's children during their minority, because in some years there was a deficit of income, although in succeeding years there was surplus income ample to meet the claim; (3) in computing the total claim of Mrs. Robinson at the sum of $7,877.18, instead of $11,296; (4) in not awarding to Mrs. Robinson's administrator the claim upon the basis of $260 per annum for annuity from testatrix's death to the death of the annuitant, and also $148 per annum from the share of income of each child supported during minority by Mrs. Robinson, being $11,-

296, less the amount paid to her on account, $6.895.56, said claim amounting to $4,400.44; (5) in finding that there was nothing due Mrs. Robinson's administrator and in disallowing the claim; (6) in calculating the claim of Mrs. Robinson's estate so as to bring it in debt to the accountant; and (7) in dismissing the exceptions of Mrs. Robinson's administrator to the refusal to allow $4,400.44, being the balance due on the claim for annuity and support of testatrix's minor children.

*Francis E. Brewster,* appellant, *pro se.*—It is manifest, from an examination of the whole will, that the testatrix intended to make an annual provision for her sister, Mrs. Robinson, which, under no circumstances, should be less than $260 in any year.

Beyond all question, therefore, if the income of the estate had failed every year, the annuitant could have enforced her claim for payment out of the principal. In Swallow v. Swallow, 1 Beav. 432, note; Stamper v. Pickering, 9 Sim. 176, and Green v. Belchier, 1 Atk. 505, where there was a deficiency of annuity, resort was had not only to all the income, but even by sale to the principal.

See also 10 Sim. 596, 1 Sim. & Stu. 463; 2 Jarman, Wills, 535–6; Bootle v. Blundell, 1 Meriv. 233; Foster v. Smith, 2 Younge & C. Ch. Cas. 193; Milner v. Milner, 1 Ves. Sr. 106; 5 Russ. 24; Rudolph's Appeal, 10 Pa. 34; Horton v. Cook, 10 Watts, 124, 36 Am. Dec. 151.

The court below disallowed the full claim for arrears presented by Mrs. Robinson's administrator, because the annuity and allowance for support of children was payable out of the income, which in some years fell short of $1,000. This was clearly erroneous.

By a proper construction of the will the surplus income is properly distributable to the *cestuis que trust* and with them to Mrs. Robinson.

As an annuitant she stood in a better position under the will than the testatrix's children; and as the recipient of the shares of those children who lived with her, in compensation for her services to them, as directed by the will, she certainly stood upon an equal footing with all the children. The surplus income was distributed among them. Why then was not Mrs. Robinson allowed to share in its distribution?

A similar direction by a testatrix for the care and charge of

her children was said in Hewson's Appeal, 13 W. N. C. 231, to be akin to an appointment of a testamentary guardian of their persons, and should be similarly construed, where the court below said (see Cox's Estate, 12 W. N. C. 160) that an annuity or legacy given in payment of services could not be the subject of abatement. See also Gassman's Estate, 10 W. N. C. 275; Wms. Exrs. *1169; Theobald, Wills, p. 459; Heath v. Dendy, 1 Russ. Ch. 543; Norcott v. Gordon, 14 Sim. 258; Reed v. Reed, 9 Watts, 263; Lewin v. Lewin, 2 Ves. Sr. 415; Duncan v. Alt. 3 Penr. & W. 382.

*Wm. Henry Lex,* for appellee.—There is a case in Pennsylvania which discusses and comments upon the various cases which have a direct bearing upon the question under consideration, and which is clearly in support of the appellee's argument, expressly deciding that in a case like the present, arrears of an annuity arising from deficiency of income in any one year are not to be paid out of the income of subsequent years. Sell's Estate, 4 W. N. C. 14. See also Foster v. Smith, 1 Phill. Ch. 629; Stelfox v. Sugden, Johns. V. C. (Eng.) 234.

OPINION BY MR. JUSTICE STERRETT:

The questions presented by this record were fully considered and correctly decided by the orphans' court. The will in question was rightly construed, and, for reasons given at length in the report of the learned auditing judge, supplemented by the opinion of the court, the decree should be affirmed.

In making provision for the support and maintenance of her five children, testatrix evidently assumed her estate would yield a clear annual income of at least $1,000. So confidently does she appear to have anticipated an annual income of more than that amount, that in the same connection she directed the excess to be applied to "the payment of the principal of all mortgages, ground rents, or other encumbrances" on her estate; and, when these were all paid, the same to be invested and treated as part of the corpus of her estate. This disposition of any excess over $1,000, is an answer to the suggestion that when the income proved to be less than $1,000, the deficit should be made up from the surplus in after years.

If the specific directions of the will, in regard to annual income, are carried out, such a thing as undisposed of or surplus

income could never be possible. It is very evident, therefore, that testatrix never contemplated less than $1,000 net income in any one year, and for that reason made no provision for supplying any possible deficiency.

The necessary result of a proper construction of the will is that testatrix's sister is entitled to receive from the trustees the shares of the income to which the children who resided with her during their minority were entitled, whether those shares amounted to the full sum of $200 each or less, also the sum of $52 per annum from the shares of each of the children who did not reside with her, and lastly an annuity of $260 from the income of the estate, for life.

The basis of settlement adopted by the court being correct, we discover no error in the calculation. The whole subject was so fully considered by the court below that further elaboration is unnecessary. Neither of the specifications of error is sustained.

Decree affirmed and appeal dismissed, at the costs of appellant.