## Newlin Estate

26

*Henry S. Miller*, for accountant and remainderman.
*J. B. Hillegass*, for claimant.

TAXIS, P. J., April 27, 1959.—. . . The reason or purpose of the filing of the account now before the court is to determine to whom shall be paid surplus income which exceeds the amounts payable to Annie J. Dowds. Objections to the account were filed by Annie J. Dowds complaining that the accountant has neglected to distribute, on account of past deficit on annuity due the objector, this excess income over the amount required to pay the annuity to Annie J. Dowds from the date of its acquisition to the date of this account. Further, that accountant has neglected to distribute on account of the past deficit of the annuity to objector principal sufficient to cover the full amount of the annuity.

Item second of the will of Grace DeLancey Verplanck Newlin, the portion of her will giving rise to the present controversy, reads as follows:

"Second: The rest, residue and remainder of my estate real and personal I give, devise and bequeath to Girard Trust Company of Philadelphia and, in the exercise of the power of appointment contained in the will of my late father DeLancey Verplanck Newlin of Secane, Delaware County, Pennsylvania, whose death occurred April 28, 1900, I give, devise and bequeath all of the property real and personal over which I have the right of disposition under said power, to Girard Trust Company of Philadelphia, to hold and administer both my said residuary estate and the estate thus bequeathed by my father, without dis-

tinction between them, upon the following trusts, to wit: To invest and reinvest the same and to collect the income thereof and, after paying all proper charges, taxes and expenses, to pay over out of the net income thereof in quarterly instalments the sum of twelve hundred dollars ($1200) per annum to my faithful nurse Annie J. Dowds of Beacon, New York, and the sum of three hundred and sixty dollars ($360) per annum to my faithful servant Michael J. Stackpole of the same place, during their respective lives; and to pay over, the balance of the net income to my mother Grace Whittemore Newlin during her life. After the decease of each of the two beneficiaries first above named, his or her share of the net income shall be paid to my said mother Grace Whittemore Newlin during her life. Upon the decease of my said mother (subject to the temporary reservation of such portions of the principal of said trust estate as may be necessary to maintain the foregoing payments of income to the two beneficiaries first above named) the entire principal of the trust estate shall be transferred, paid over and distributed in equal portions to and among such of the following eleven persons as shall be then living, viz: [Here is listed 11 persons including Annie J. Dowds.]

"If, at my decease, my aunt Maud Newlin Page is no longer living, I bequeath her share of my estate to her children then surviving. The share of any other beneficiary who shall predecease me shall not be paid to their representatives, but shall be distributed among the surviving beneficiaries. I direct that the share of my estate bequeathed to my aunt Mabel Whittemore Roth shall not be paid to her in cash, but that my Executor shall purchase an equivalent annuity payable to her during her life. Since Annie J. Dowds and Michael J. Stackpole were both in being at the death of my father on April 28, 1900, I have

been advised that the whole of the foregoing provisions relative to the Trust Estate are legal and enforcible; but if, on any technical ground, that portion of the foregoing trust in favor of Annie J. Dowds or Michael J. Stackpole which includes property of any kind derived from the estate of my father, shall be judicially held to be invalid and in consequence the income which I have bequeathed to these two beneficiaries shall thereby be reduced to less than the full amount named, then, to the extent necessary to make up for this reduction, and in the exercise of my power of appointment under my father's will, I direct my Executor to purchase forthwith annuities of such amounts as will replace such deficiencies."

Approximately 13 months after the date of execution of her will, testatrix executed a codicil thereto, which stated:

"In the second clause of my said will I have directed Girard Trust Company of Philadelphia to pay, out of the income of the trust estate which I have bequeathed to said Company in trust, the sum of twelve hundred dollars ($1200) per annum, in quarterly instalments, to my faithful nurse Annie J. Dowds during her life. I hereby substitute for said sum of twelve hundred dollars ($1200) per annum the sum of eighteen hundred dollars ($1800) per annum, payable in quarterly instalments to said beneficiary."

Under item second of her will dated March 25, 1929, and by codicil thereto dated May 10, 1930, Grace De-Lancey Verplanck Newlin devised and bequeathed the net residue of her estate in trust to "pay over out of the net income thereof in quarterly installments" the sum of $1,800 per year to Annie J. Dowds and the sum of $360 per year to Michael J. Stackpole, during their respective lives, and to "pay over the balance of the net income" to the testatrix' mother, Grace Whittemore Newlin, during her life. After the death

of Annie J. Dowds and Michael J. Stackpole, the will directed that "his or her share of the net income" was also to be paid to the testatrix' mother, Grace Whittemore Newlin, during her life. Upon Grace Whittemore Newlin's death, the trust was to terminate and the principal was to be distributed outright to such of the 11 named remaindermen as should then be living "subject to the temporary reservation of such portions of the principal of said trust estate as may be necessary to maintain the foregoing payments of income" to Annie J. Dowds and Michael J. Stackpole.

For a number of years the income of the trust was insufficient to provide for the payment in full of the amounts of income thus directed in the will and codicil and substantial arrearages arose with respect to the amounts payable annually to both beneficiaries. Michael J. Stackpole died in 1941. Grace Whittemore Newlin, mother of testatrix, died in 1949. Annie J. Dowds survives. Since 1953, three years after the death of the mother, the income of the trust has been more than sufficient to provide for annual payments in full to Annie J. Dowds, and surplus income in the approximate amount of $2,900 has accumulated. Ten of the remaindermen named in the will survived Grace Whittemore Newlin and of these nine are presently living. Annie J. Dowds is also one of these remaindermen.

Annie J. Dowds has requested this court to decide whether principal can be used to make up the deficiency in the payments of prior years. The accountant has estimated that the total arrearages at present amount to $10,150.

The court is also called upon to determine whether the surplus income is payable to Annie J. Dowds on account of the deficiency for prior years or whether it is payable to the remaindermen.

The persuasive argument of counsel for objector nothwithstanding, this case cannot be disposed of by simply determining that testatrix created an "annuity" in favor of Annie J. Dowds, and then following what might broadly be termed the general rule that deficiencies in annuities may be made up by invasion of the corpus.

In Dwight Estate, 389 Pa. 520 (1957), it was stated that the word "annuity" did not contain any magic requiring a particular method for its payment. As in that case, our problem is not merely whether an "annuity" was created, but what manner of payment will be utilized in the event that the income becomes deficient. The court there went on to state that the fact that the word "annuity" is used by testator or settlor is of great significance in determining his intent as to whether a particular bequest was intended to be a "gift of income" or an "annuity," but that the mere use of the word "annuity" should not be controlling in the determination of the source or manner of its payment.

Dwight Estate, supra, laid down the factors to be considered in determining what testator intended in the event the income proves insufficient to pay bequests. These factors are (1) The presence or absence of a provision in the will or codicil for an invasion of or an encroachment upon corpus in the event the income becomes insufficient; (2) whether the recipient of the bequest is a primary object of the testator's or settlor's bounty; (3) whether the bequest was intended for the maintenance of the annuitant or the recipient of the bequest; (4) was there a direction in the will or in the trust that the bequest be paid "from income" or "out of income"; (5) did the testator or settlor make provision for the disposition of the excess or surplus income; (6) if the words used indicate that the fund from which the annuity or bequest is to be paid shall be kept intact and then paid over to certain

specified beneficiaries such fact is some indication of an intent that the bequest shall not be paid from principal; (7) the use of the words "annuity" or "annuities" may be strong indication that testator intended that the annuitant or recipient of the bequest should have the right to encroach upon principal; (8) if the will or trust contains no limitation of payment of the bequest from income such a factor may indicate an intent that the principal may be invaded.

Annie J. Dowds was a devoted nurse and companion of testatrix, but she cannot be said to have been the primary object of decedent's bounty. On this point, it has been stated that the right of a legatee, whether an annuitant or the recipient of a gift of income, to have an income deficiency made good out of the corpus of a fund does not depend upon any rule of law, but rather upon the intent of testator gleaned from the trust provisions in the will and his relationship to the objects of his bounty: Dwight Estate, supra.

What did Grace DeLancey Verplanck Newlin intend relative to the invasion of principal of the trust she created in order to make up deficiencies of income?

No artificial rules of interpretation will be applied when the will itself is clear and unambiguous. This proposition was affirmed in Reed's Estate, 236 Pa. 572 (1912), where the court stated that "we are not making a will for this testatrix, but simply ascertaining from the will she has herself made what her intentions were."

First, testatrix disposed of all surplus income during her mother's life, as well as providing that on the death of her mother there would be no income, by subjecting such "portions of the principal of said trust as may be necessary to maintain the foregoing payments of income." Second, the use throughout of such phrases as "out of the net thereof," "the balance of the net income," "payments of income," and "the income which I have bequeathed," certainly indicate that

testatrix meant "income" and not "principal" as the place from which the payments were to come. Clearly, testatrix foresaw the possibility of deficiencies and decided against an invasion of the principal. Judging from the clarity of the rest of her will, if testatrix had intended an invasion of the principal to pay deficiencies of income to Annie J. Dowds, she would have said so in no uncertain terms.

Third, there is no indication whatsoever that the bequest was intended for the maintenance of Annie J. Dowds. Indeed, it was undoubtedly apparent to testatrix that, with her own death, her nurse could not subsist on $1,800 per annum.

A close reading of item second reveals that testatrix desired the fund from which the $1,800 per annum was to be paid to be kept intact and ultimately turned over to the remaining 11 named persons.

With respect to the problem concerning the disposition of present excess income over the amount of $1,800 per annum, this court is of the opinion that all income in excess of $1,800 per annum be distributed currently to the remaindermen. I am well aware of a so-called general rule that, in the case of annuities, arrearages are to be made up from subsequent accumulations of income: Reed's Estate, supra; Rudolph's Appeal, 10 Pa. 34 (1849). In this case, however, testatrix herself provided for complete disposal of all surplus income. This fact alone reveals the intent of testatrix with respect to accumulations.

The objections filed to the account are dismissed. The accountant is directed to distribute to the remaindermen living at the death of testatrix' mother the present balance of surplus income and all future income in excess of $1,800 per annum, and to distribute trust principal in excess of the amount necessary to support payments of $1,800 per annum to Annie J. Dowds for her life.

The account is confirmed, and it is ordered and decreed that Girard Trust Corn Exchange Bank (formerly known as Girard Trust Company), testamentary trustee as aforesaid, forthwith pay the distributions herein awarded.

And now, April 27, 1959, this adjudication is confirmed nisi.